# Richmond.

## JAMES JACOBS V. COMMONWEALTH.

### March 16, 1922.

### Absent, West, J.

1. HOMICIDE—*Malice—When Malice Implied—Case at Bar.*—Prior to the shooting, deceased and the prisoner had been on good terms, but the prisoner was armed with a pistol which he said he put in his pocket that night for use "if anything should happen." With this deadly weapon he shot the deceased in the back and killed him.

    *Held:* That from these facts the law implies malice, and the jury were warranted in finding that accused did not sustain the burden of rebutting the presumption thus arising against him.

2. HOMICIDE—*Provocation—When Provocation Reduces Homicide to Manslaughter.*—Provocation cannot be relied upon to reduce murder in the second degree to manslaughter, unless the provocation has so aroused the anger of the assailant as to temporarily affect his reason and self-control.

3. HOMICIDE—*Provocation—When Provocation Reduces Homicide to Manslaughter—Case at Bar.*—In the instant case defendant did not claim that the provocation so aroused his anger as to temporarily affect his reason, but expressly negatived such defense by claiming that he shot the deceased because he thought that action necessary to save his mother and himself.

    *Held:* That under the evidence, the jury might find defendant guilty of murder in the second degree.

4. HOMICIDE—*Sufficiency of Provocation a Question for Jury.*— When there is room upon the evidence for a difference of opinion, the question whether the alleged provocation sufficiently operated on the mind of the accused to repel the presumption of malice arising from the killing, and thus reduce the grade of the offense, is one for the jury to determine. In every such case it is the province of the court to instruct the jury as to the nature and extent of the provocation sufficient to reduce a homicide from murder to manslaughter, but it is the province of the jury to determine whether, under the facts of the particular case, the alleged provocation rather than a malicious purpose actuated the perpetrator.

5. HOMICIDE—*Malice—Degrees of Homicide—Test of Murder is Malice.*—Every malicious killing is murder either in the first or second degree—the former if deliberate and premeditated, and the latter if not.

6. HOMICIDE—*Malice—Presumption of Malice and Premeditation—Homicide Prima Facie Murder in the Second Degree—Burden of Proof.*—There is a *prima facie* presumption of malice arising from the mere fact of a homicide, but there is no presumption therefrom of deliberation and premeditation. This is merely another way of stating the familiar rule of law that every homicide is *prima facie* murder in the second degree, and that the burden is on the accused to reduce, and on the Commonwealth to elevate, the grade of the offense.

7. HOMICIDE—*Degree of Homicide—Reliance of Accused on Testimony of Commonwealth.*—The accused may rely upon circumstances of extenuation appearing in the evidence produced by the Commonwealth to reduce his offense from murder in the second degree to manslaughter with the same effect as if brought out in evidence offered by him.

8. HOMICIDE—*Malice—Whether Malice Exists for Jury—Grade of Offense for Jury.*—Whether malice exists in a particular case is usually a question for the jury, and although in perfectly clear cases the courts have held that the evidence was not sufficient to show malice even where the jury had found to the contrary, yet malice is a subjective condition of mind, discoverable only by words and conduct, and the significance of the words and conduct of an accused person, wherever there can be doubt about such significance, addresses itself peculiarly to the consideration of the jury, and the determination of the grade or degree of homicide is a question for the jury.

9. HOMICIDE—*Questions of Law and Fact—Existence of Provocation Sufficiency of Provocation.*—The sufficiency of the provocation to excuse or extenuate murder is generally a question of law. Whether such provocation existed in the particular case is a question of fact.

10. HOMICIDE—*Sufficiency of Provocation—Adequate Provocation and ungovernable Passion Must Concur—Case at Bar.*—In the instant case a violent attack by deceased upon the mother of accused was legal ground for anger upon his part, but in order to extenuate homicide to manslaughter, the provocation must be such as to have actually excited strong passion, so as to have temporarily unsettled the reason. Both adequate provocation and ungovernable passion must concur; and in the instant case, although the adequate provocation was present, neither the accused nor any other witness in the case testified

to any overpowering passion on his part. The evidence which the accused himself adduced, if it did not preclude the question of ungovernable passion on his part entirely, certainly brought about such a state of facts that the question of whether the provocation produced the state of mind necessary to extenuate the killing to manslaughter clearly rested with the jury.

Error to a judgment of the Circuit Court of Northampton county.

*Affirmed.*

The opinion states the case.

*J. Brooks Mapp,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

Upon an indictment for the murder of Harvey Palmer, James Jacobs was found guilty and sentenced to a term of ten years in the penitentiary.

The defendant excepted to the giving of a number of instructions, and also to the overruling of a motion for a new trial, but the sole contention presented to us is that the evidence was not sufficient to warrant a conviction of murder in the second degree.

All of the parties involved were colored persons. The killing occurred about two o'clock on the morning of August 5, 1920, at the home of the prisoner and his mother, Ellen Carpenter. Beginning earlier in the night, there was a drinking and dancing party at the house, those present having been invited there by Ellen Carpenter and her niece, Leah Douglas. Some thirty or forty guests were in attendance. Ellen Carpenter sold food from one table and Leah Douglas sold whiskey from another table in the same room.

This was a continuous performance, and the drinking was rather general. Both the prisoner and the deceased were among those who bought and drank whiskey. Most of the guests had left the place before the shooting occurred. Some trouble arose between the deceased and his wife. Ellen Carpenter interceded in an apparently inoffensive way, saying to Harvey Palmer, the deceased: "Your wife has not done anything; let her alone," whereupon he struck Ellen Carpenter with his fist, knocking her down, and Leah Douglas exclaimed, "Lord, he has killed Aunt Ellen."

There is an irreconcilable conflict of evidence in some of the particulars of the shooting. Upon the testimony of the Commonwealth, the jury might have believed, and from their verdict evidently did believe, that before Jacobs opened fire, Ellen Carpenter was getting up on her feet; that Buck Palmer, without making further demonstration or exhibiting any weapon, had turned and was walking away, having gone a distance variously estimated by the witnesses at from a few feet to five or six yards, when Jacobs stepped forward and said: "Buck, you are not going to hit my mother like that," at the same time firing three shots at Palmer, two of which took effect. It is conceded that the deceased was shot in the back.

On the other hand, according to the testimony of the prisoner and some of his witnesses, the deceased was leaning over the prostrate form of Ellen Carpenter with a pistol in his hand, and the prisoner, after exclaiming, "Don't you kill my mother!" fired the first time for the purpose of defending his mother, and continued to fire because he feared for his own life. He does not claim to have acted in hot blood or under the propulsion of a sudden fit of anger.

The conflict in the evidence was, of course, to be settled by the jury, and it is pertinent to observe that the testimony for the defense was materially discredited in several respects, particularly by the admitted fact that the wit-

nesses for the accused who had previously testified at the coroner's inquest on the day after the shooting did not at that time say anything about a pistol in the hands of the deceased.

[1] It is true that the prisoner and the deceased seem to have been on good terms prior to the shooting, but the prisoner was armed with a pistol which he said he put in his pocket that night "for use if anything should happen." With this deadly weapon, he shot the deceased in the back and killed him. From these facts the law implies malice, and the jury was warranted in finding that he did not sustain the burden of rebutting the presumption thus arising against him.

[2-4] In the brief of counsel for the defendant it is insisted that he acted under great provocation. It must be remembered, however, that provocation cannot be relied upon to reduce murder in the second degree to manslaughter, unless the provocation has so aroused the anger of the assailant as to temporarily affect his reason and self-control. The authorities for this familiar proposition are cited hereafter. In this case the defendant does not claim to have been thus affected. He expressly negatives any such defense by claiming that he shot the deceased because he thought that action necessary to save his mother and himself, and he does not in his testimony rely upon provocation as a defense. When there is room upon the evidence for a difference of opinion, the question whether the alleged provocation sufficiently operated on the mind of the accused to repel the presumption of malice arising from the killing, and thus reduce the grade of the offense, is one for the jury to determine. In every such case it is the province of the court to instruct the jury as to the nature and extent of the provocation sufficient to reduce a homicide from murder to manslaughter, but it is the province of the jury to determine whether, under the facts of the particu-

lar case, the alleged provocation rather than a malicious purpose actuated the perpetrator.

[5-7] The test of murder is malice. Every malicious killing is murder either in the first or second degree—the former if deliberate and premeditated, and the latter if not. Furthermore, there is a *prima facie* presumption of malice arising from the mere fact of a homicide, but there is no presumption therefrom of deliberation and premeditation. This is merely another way of stating the familiar rule of law that every homicide is *prima facie* murder in the second degree, and that the burden is on the accused to reduce, and on the Commonwealth to elevate, the grade of the offense. *Hill's Case*, 2 Gratt. (43 Va.) 595; *Potts' Case*, 113 Va. 732, 73 S. E. 470; *Bryan's Case,* 131 Va. 709, 109 S. E. 477, 478. This, of course, does not mean that the accused may not rely upon circumstances of extenuation appearing in the evidence produced by the Commonwealth with the same effect as if brought out in evidence offered by him.

[8] Whether malice exists in a particular case is usually a question for the jury. We have held in perfectly clear cases that the evidence was not sufficient to show malice, even where the jury had found to the contrary, but malice is a subjective condition of mind, discoverable only by words and conduct, and the significance of the words and conduct of an accused person, wherever there can be doubt about such significance, addresses itself peculiarly to the consideration of the jury.

"The determination of the grade or degree of homicide is a question for the jury." 2 Michie on Homicide, p. 1388.

[9] "The sufficiency of the provocation to excuse or extenuate murder is generally a question of law. Whether such provocation existed in the particular case is a question of fact." 21 Cyc. 1028, and cases cited in note 67.

In *State* v. *Morrison,* 49 W. Va. 211, 38 S. E. 481, the defendant, Morrison, upon a sudden quarrel, struck the de-

ceased with a heavy stick, and claimed to have acted in self-defense. He was indicted for murder and convicted of that offense in the second degree. The defendant and a man named Dempsey were the only eyewitnesses to the tragedy. They both testified, and their testimony, which was practically identical, constituted the only evidence upon which the State could rely for a conviction. There was room under this evidence to claim that the accused acted in hot blood, and still, as stated above, he relied upon self-defense. The opinion of the court by Judge Poffenbarger dealt with the law of the case in both aspects as follows: "The instrument with which the wound was inflicted is proved by the result to have been a deadly weapon. It was for the jury to say whether the act was done in the heat of blood, and therefore amounted in law to manslaughter only, or in self-defense, and justifiable. They have failed to find, as a matter of fact, that the act was done as the result of passion and heat of blood, or in self-defense; but, on the contrary, that the blow was administered with a deadly weapon, *and* with the intent, at least, to do severe bodily harm, and from it death resulted; and there is evidence to support each of these findings. From these facts the jury might rightfully infer that the act was done maliciously." See also *Bryan's Case, supra; State* v. *Dillard,* 59 W. Va. 197, 53 S. E. 117; *Maher* v. *People,* 10 Mich. 212, 81 Am. Dec. 781; *State* v. *Hoyt,* 13 Minn. 132, 147 (Gil. 125) ; *Seals* v. *State,* 3 Baxter (Tenn.) 459.

In the light of the foregoing principles and authorities, it would seem that the language of the West Virginia Supreme Court in *State* v. *Beatty,* 51 W. Va. 232, 41 S. E. 434, is peculiarly applicable here. In that case the accused was convicted of murder in the first degree, and one of the questions involved was whether the killing was the result of passion. The court said: "If in any case the finding

of a jury on this peculiar question might be set aside by the court, it cannot be done in this instance."

[10] To be sure, there was ample evidence of provocation in the case at bar. The deceased had just made a violent attack on the mother of the accused, and that was legal ground for anger on his part (Davis' Crim. Law, 84). But we must not lose sight of the fact that the effect of the provocation on the defendant's state of mind was the material and decisive question.

In Davis' Crim. Law, p. 84, it is said: "The indulgence shown to the first transport of passion, in these cases, is plainly a condescension to the frailty of human nature, to the temporary madness, which, while the frenzy lasts, renders the man deaf to the voice of reason. And, therefore, the provocation which extenuates in the case of homicide must be something which the man is conscious of, which he feels and resents at the instant the act which he would extenuate is committed; not what time or accident may afterwards bring to light. Passion arising from sufficient provocation is evidence of the absence of malice and reduces homicide to manslaughter; but passion without provocation, or provocation without passion, is not entitled to this indulgence; and where there are both provocation and passion, the provocation must be sufficient."

In Minor's Synopsis of Criminal Law, page 46, it is said that the provocation, in order to extenuate homicide to manslaughter, must be such as to have *"actually excited* strong passion, so as to have temporarily *unsettled the reason.* Adequate provocation and ungovernable passion must concur," citing several Virginia cases.

In *Read's Case*, 22 Gratt. (63 Va.) 924, 938, it is said: "It is not only necessary in such a case and for such an effect that a reasonable provocation should be received, but it is also necessary that the provocation should have the effect of producing sudden passion under the influence of

which alone the offense is committed. It must be a sudden transport of passion, which the law calls *furor brevis.* If a person, on receiving the gravest provocation, is unmoved by passion, but wantonly and willfully and wickedly kills his adversary otherwise than in self-defense, he is guilty of murder. The law mitigates the offense to manslaughter, only as an indulgence to the infirmity of human nature. Provocation without passion, or passion without provocation will not do; both must concur to reduce the offense to the grade of manslaughter."

In *State* v. *Ellis,* 74 Mo., at page 218, the court said: "It is to be observed also that it is the *state of mind* when produced by lawful provocation, and not the provocation itself, which makes the killing manslaughter, for although there may have been what is denominated as lawful provocation, yet if such provocation did not in fact produce the *state of mind* above described  *  *  *  the killing would be murder at common law, and under our statute murder in the first degree."

No doubt the accused was mad, but anger and malice frequently accompany each other, and neither he nor any other witness in this case testified to any overpowering passion on his part. On the contrary, his effort and the effort of his mother and his cousin, Leah Douglas, were to prove that he shot purely to save his mother's life and his own. This was the only theory which his testimony and that of his witnesses seemed designed to establish. The jury evidently believed, as they might well have done under the evidence, that the assault on his mother had ended and that he was in no danger. Their verdict concluded that question. The case, therefore, comes to us as one in which, at an unlawful drinking and dancing party, sponsored by his mother, the accused armed himself with a pistol for use "if anything should happen," and used it to kill a man on a false pretext. The evidence which he himself adduced,

44

if it does not preclude the question entirely, certainly brought about such a state of facts as that the question of whether the provocation produced the state of mind necessary to extenuate the killing to manslaughter clearly rested with the jury.

For the reasons stated, we are of opinion that the judgment complained of was free from error, and that the same must be affirmed.

*Affirmed.*

BURKS, J., dissenting:

I concur with the majority of the court in saying that the plaintiff in error did not kill the deceased in order to protect his mother, or in self-defense. His whole tale on this subject is a fabrication, whether from fright or other cause, I do not know. He had not previously given an account of the shooting to any one else. He did not kill to protect his mother, but because he was mad, and justly and lawfully mad. Just as he came around the corner of the house he saw the deceased knock his mother down, and heard the exclamation, "Lord, he has killed Aunt Ellen!" He rushed up at once and began firing at such close range that there were powder marks on the clothing of the deceased. It is wholly immaterial that the deceased was retreating. It is inconceivable to me that there was no passion arising from the transaction. In such case, "passion arising from sufficient provocation is evidence of the absence of malice, and reduces homicide to manslaughter." Davis Cr. Law, 84. This is one of the few cases in which the law recognizes the frailty of human nature and reduces the crime from murder to manslaughter.

The author just cited says, at pages 83-4: "The provocation that will be allowed to extenuate the guilt of voluntary homicide must be of a nature which, regarding man as he is, might reasonably and naturally have excited his passions beyond the power of his reason to control his conduct.

Thus, if a man were to find another in the act of adultery
with his wife, and thereupon to kill him in the first trans-
port of passion, he would only be guilty of manslaughter,
and that of the lowest degree, because there could not be
a greater provocation. Thus, also, any assault made with
violence or circumstances of indignity upon a man's per-
son, as by pulling him by the nose, if it be resented im-
mediately by the death of the aggressor, and it appears
that the party acted upon the heat of blood upon that provo-
cation, will reduce the crime to manslaughter.

*     *     *     *     *     *     *     *

"The indulgence shown in the first transport of passion,
in these cases, is plainly a condescension to the frailty of
human nature, to the temporary madness, which, while the
frenzy lasts, renders the man deaf to the voice of reason.
And, therefore, the provocation which extenuates in the
case of homicide must be something which the man is con-
scious of, which he feels and resents at the instant the act
which he would extenuate is committed; not what time or
accident may afterwards bring to light. Passion arising
from sufficient provocation is evidence of malice, and re-
duces homicide to manslaughter; but passion without provo-
cation, or provocation without passion, is not entitled to
this indulgence; and where there are both provocation and
passion, the provocation must be sufficient.

*     *     *     *     *     *     *     *

"Between persons nearly connected by natural or civil
ties, the law admits the force of a provocation given to one
to be felt by the other. Therefore, homicide committed by
the husband or wife, parent or child, master or servant, of
the person injured, is entitled to the same construction as
if such injury had been done to the person resenting it."

Under the circumstances, I think the offense of the plain-
tiff in error was manslaughter, and not murder.