# Richmond

## WILLIE MOSBY v. COMMONWEALTH OF VIRGINIA.

March 11, 1937.

Present, All the Justices.

The opinion states the case.

*R. I. Overbey*, for the plaintiff in error.

*Abram P. Staples, Attorney-General, Edwin H. Gibson, Assistant Attorney-General,* and *Joseph L. Kelly, Jr.,* and *Ralph H. Ferrell, Jr., Special Assistants,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On the evening of February 18, 1936, Willie Mosby shot and killed Alexander Hubbard. He has been tried, found

guilty of first degree murder and sentenced to forty years confinement in the State penitentiary.

On familiar principles, we look primarily to that evidence which tends to sustain this conviction. Sam McKeever and Rosa, his wife, lived near Brookneal, in Campbell county. At their home on this evening were gathered the accused, the decedent, Mack McKeever and Jesse Forest, all colored. Near by was the Mosby home from which he had come an hour or two before trouble began. During this time these people sat about a fire in the McKeever living room, all apparently on friendly terms. The party then broke up. Hubbard said he believed he would go home. Mosby then spoke up "What's that you say you are going to do to me for giving Annie a chew of tobacco?" To this Hubbard in substance replied that he meant what he had said and that they would fight it out. Both men stood up. Rosa McKeever told them that they could not fight in her house. Mosby started out of the room when Hubbard called out "God damn you, nigger, I'll come out there and kill you," and probably continued to curse him. When Mosby left the room he shut the door, soon afterwards he opened it, said "Quit Woofing at me," which means "talking back," and shot once. The bullet struck Hubbard in his right eye, killing him instantly.

At the time he was shot he was still cursing and had one hand in his hip or overall jacket pocket, but he was standing still, three or four steps from the open door, and fell with his head in the kitchen and his feet in the living room. Estimates vary as to the time which passed after Mosby went out and closed the door before he opened it again. One witness thought it was about a second, another that it was probably not more than two minutes. In any event there was an appreciable lapse of time but it was short, and Mosby on the outside must have heard Hubbard still cursing for, as we have seen, he opened the door and at the same time cried out "Quit Woofing at me," and shot. But this pregnant fact remains; he had gone out of the room and shut the door, after which he opened it and shot Hubbard, who neither at that time nor at any other time was advancing upon him.

Mosby tells us that "I went out and pulled the door behind me, and then the door flew open and I thought it was him and I shot." He further contends that he did not intend to shoot Hubbard at all but was himself scared and shot to frighten him. In short he contends that this shot resulted in an unintended accident.

In Hubbard's jacket pocket was found an unopened pocket knife with a four-inch blade. As we have seen, Mosby had a pistol. The reasons he gives for taking it to the McKeever home are not satisfactory. He tells us that not long before some one came to the back door of his house and tried to get in, and so he procured a pistol and took it with him to Mc-Keever's because "if I saw anybody there when I come home I would have something."

These two men were on unfriendly terms. Mosby had given Hubbard's wife some tobacco and this bit of attention Hubbard resented. As we have seen Hubbard had made threats, and when the party was breaking up, Mosby brought the subject up; "I said what's that you are going to do to me for giving Annie a chew of tobacco?" Trouble in view of this might well have been expected, and it is highly probable that in its anticipation Mosby had gone armed.

Does this evidence support the verdict? Plainly self-defense cannot be relied upon to excuse or justify the killing. When Mosby opened this door and shot, Hubbard was standing still, three or four steps away. He had made threats and he was cursing but no overt act was in evidence, beyond the fact that he was standing nine to twelve feet away with a hand in his pocket. If we were to concede that Mosby ever had any reason to believe that he was in danger, plainly he had reached a place of complete safety when he went out of the room and shut the door. Moreover he himself tells us that he shot to scare Hubbard and killed him by accident.

The most that can be said by way of excuse is that while he stood outside of a shut door, he could still hear Hubbard cursing him, but plainly that is not enough. Profanity may explain a sudden broil and on this subject the jury was properly instructed, but beyond this it can neither

palliate, excuse nor justify the homicide. This is doubly true where the accused is the aggressor and provoked the difficulty.

Was there an accident, and what responsibility follows an accident in such circumstances? This was an ordinary living room in which there were five people. He who knew this and who recklessly shot into it must abide the consequences.

If one, without more, in utter recklessness, throws a timber from some housetop into a crowded street and death results, that is common law murder, made with us murder in the second degree by statute. *Whiteford* v. *Commonwealth*, 6 Rand. (27 Va.) 721, 18 Am. Dec. 771; *Pierce* v. *Commonwealth*, 135 Va. 635, 115 S. E. 686, 28 A. L. R. 864. But if he looked down and saw the people there and then threw the timber, the act would be premeditated, and we would have first degree murder.

"On a charge of murder, malice is presumed from the fact of killing, and 'when the Commonwealth has proven the commission of a homicide, and has pointed out the accused as the criminal agent, then it may rest its case, and, unless the accused shows circumstances of justification, excuse, or alleviation, a verdict of murder in the second degree will be warranted.' *Mercer's Case*, 150 Va. [588] 594, 142 S. E. 369, 370." *Adams* v. *Commonwealth*, 163 Va. 1053, 178 S. E. 29.

If in such a case the Commonwealth then shows deliberation, it has borne that burden necessary to make the offense murder in the first degree.

Even though the provocation be great, if there has been cooling time that defense cannot avail. *Watson* v. *Commonwealth*, 87 Va. 608, 13 S. E. 22.

"Provocation without passion or passion without provocation will not do; both must concur to reduce the offense to the grade of manslaughter." *Read* v. *Commonwealth*, 22 Gratt. (63 Va.) 924; *Jacobs* v. *Commonwealth*, 132 Va. 681, 111 S. E. 90.

At the risk of reiteration, we will state just what happened. Mosby, who knew that Hubbard was angered by Mosby's gift to Hubbard's wife, armed himself, went to the

McKeever home, and asked Hubbard what he was going to do about it. Hubbard said "Let's fight it out." Mosby answered "All right, come on," and he stepped out of the door and he closed the door behind him. Afterwards he opened the door and in the act of opening it upbraided Hubbard for his abuse and shot him.

In these circumstances the jury believed, as it had a right to believe, that Mosby opened this door and shot with intent to kill.

"To constitute a willful, deliberate and premeditated killing, it is not necessary that an intention to kill should exist for any particular length of time prior to the actual killing; it is only necessary that such intention should come into existence for the first time at the time of such killing or any time previously." *Wright's Case,* 33 Gratt. (74 Va.) 880, 893, opinion by Moncure, P.; *Whiteford* v. *Commonwealth, supra;* First Wharton's Criminal Law (11th Ed.) p. 592.

It is the will and purpose to kill and not the interval of time which fixes the grade of the offense, and this "is generally a question which lies peculiarly within the province of the jury." *Bryan* v. *Commonwealth,* 131 Va. 709, 109 S. E. 477, 478.

The jury did not believe that it was an accident and it had a right to believe that after Mosby had gone out of the room and shut the door, and after he found that Hubbard was not going to follow him, returned and shot him. Indeed we do not see how the jury could well have reached any other conclusion unless it had discarded the Commonwealth's evidence *in toto* and accepted as true Mosby's account of all that was done.

It is of course true that if the provocation is more than slight, and if a homicide results therefrom, a verdict of murder in the first degree cannot be sustained, and we are cited to many cases which sustain this settled rule. But to avail there "must be a sudden transport of passion, which the law calls *furor brevis.*" *Davidson* v. *Commonwealth,* 167 Va. 451, 187 S. E. 437, 439. Plainly a jury was justified in finding that this was not the case where one goes out of a room, shuts

the door, comes back, opens it and kills the object of his anger. Moreover, as we have seen, it was Mosby's question on a sore subject, deliberately propounded and calculated to bring about trouble, which did bring it on.

A number of objections are taken to instructions. These assignments, beyond the fact that they bring up the defendant's claim that the verdict is without evidence to support it, are without merit.

For reasons given, the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*