# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## HUGH RAYMOND WILLIAMSON v. COMMONWEALTH OF VIRGINIA.

December 7, 1942.

Record No. 2626.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

278

The opinion states the case.

*Frank A. Kearney*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Edwin B. Jones, Assistant Attorney General*, for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

■ Hugh Raymond Williamson, who will hereafter be generally referred to as the accused, was tried on October 28, 1941, in the circuit court of Elizabeth City county, Virginia, and convicted of murder in the second degree and was sentenced to a term of five years imprisonment in the penitentiary. The charge against him was that of murder by shooting his wife on June 30, 1941. The strength of the case of the Commonwealth is fortified by the verdict of a jury confirmed by the judgment of the court. All conflicts in the

evidence must be resolved in favor of the Commonwealth, and the evidence must be interpreted in the light most favorable to it.

The substance of the defense is that the accused was guilty of manslaughter, if guilty at all, and that the court committed reversible error in not sustaining the motion to strike the evidence, at the conclusion of its presentation by the Commonwealth, as to the charge of murder in the first and second degrees, and submitting the case to the jury on the bare question of whether or not the defendant was guilty of voluntary manslaughter. This motion is an innovation in Virginia and does violence to our conceptions of orderly and proper legal procedure. If the jury's consideration were confined to the issue suggested by the motion, that is, voluntary manslaughter, only a part of the evidence would have come within its purview. The case should have been submitted to the jury upon all of the evidence, as was done. To delete it would have been an invasion of the province of the jury and an usurpation of its functions by the court.

This court has said: "A motion to strike out all the evidence is in substance the same as a directed verdict; that is, the party making the motion is attempting to deprive his opponent of a trial by jury." *Thornhill* v. *Thornhill*, 172 Va. 553, 2 S. E. (2d) 318; see also *Stockton* v. *Charlottesville*, 178 Va. 164, 167, 16 S. E. (2d) 376. It is said it should never be entertained unless it plainly appears that the trial court would be compelled to set aside any verdict for the party whose evidence it is sought to strike out. Of course no such circumstances appear here.

The element in murder either in the first or second degree which distinguishes it from voluntary manslaughter is malice, expressed or implied, and malice, in its legal acceptation, means any wrongful act done wilfully or purposefully, and it is presumed from the act of killing, unaccompanied with circumstances of extenuation, and the burden of disproving malice is upon the accused. *Mercer* v. *Commonwealth*, 150 Va. 588, 142 S. E. 369; *Sun Life Assur. Co.* v. *Bailey*, 101 Va.

443, 448, 44 S. E. 692; *Honesty* v. *Commonwealth*, 81 Va. 283; *Thompson* v. *Commonwealth*, 131 Va. 847, 109 S. E. 447.

■ The question whether a particular homicide is murder in the first or second degree is one of fact for the jury. *State* v. *Morrison*, 49 W. Va. 210, 218, 38 S. E. 481; *State* v. *Welch*, 36 W. Va. 690, 15 S. E. 419.

■ The offense of sustaining a motion to strike out all the evidence as being tantamount to a directed verdict is not palliated by limiting the effect of the motion to a lesser crime selected for the jury by the court, as was purposed by the motion in the case at bar.

This brings us to a brief recital of the facts. In May, 1941, the accused charged his wife with being unfaithful to him in that she received intimate attentions from another man. This he alleged to be so, but, for want of any proof of it appearing in the record, it might well have been a creation of his imagination. At any rate, he seized it as a cause for forcing her to quit his house and go to her mother's home. Subsequently he took her to an attorney's office for the purpose of filing a suit for divorce or taking the preliminary steps to that end. The attorney discouraged this, but the several visits to him resulted in the preparation of a separation agreement which was executed by both parties. By its terms she surrendered all of her marital rights in his property and released him from any obligations of any nature.

For a number of years they had lived happily together and had gotten on in the world. They both worked away from home, he for the Newport News Shipbuilding and Dry Dock Co. and she was employed in a laundry at Fort Monroe. She traveled to and from the laundry, which was several miles distant, in an automobile which she owned and it appears that she frequently conveyed other persons to their places of employment and to places of amusement after working hours.

On June 29, 1941, she drove a young woman named Eleanor Bright and her male companion to the home of a young man named Studivent, who lived in the city of Newport News. He accepted their invitation to accompany them to the home of Leola Lovett and from there they went to a

church, where the wife of the accused was to take part in a play. Later they took the men to their homes in Newport News and the women returned to Eleanor Bright's where they spent the night. This was on Sunday, the 29th of June, 1941. On the next afternoon the wife of the accused drove to his house in company with his sister and her husband and Studivent. The wife of the accused and Studivent remained in the automobile while the other occupants got out and went into the house. The accused was in the house at the time. His sister began preparing supper for the family. Not very far away was Mitchell's filling station and soft d r i n k and miscellaneous merchandise store. Studivent and the Williamson woman drove to the store where they purchased soft drinks. They stopped the car just off the store front and in view of persons who were occupying the porch, of whom there were some six in number at one time. There was an electric light on the porch and one on the gas pump of the filling station. In a very few moments the accused, with Frank Henry, his brother-in-law, drove past his wife's car some six feet and stopped. He recognized her with Studivent and ran back to her car with a pistol, which he had brought with him, and emptied its contents through the window, hitting Studivent six times and so wounding his wife that she got out of the car and staggered into the store and expired before medical aid could be had. Studivent fled to the nearby home of a Mrs. Hamilton, followed by the accused, who in the presence of Mrs. Hamilton expelled the empty shells from his pistol and reloaded it. The presence of Mrs. Hamilton prevented him from entering the house. The accused drove to Petersburg that night, where his mother lived. At Petersburg he abandoned his car and took a train for New York. He returned in two days and voluntarily surrendered himself to the Elizabeth City county officials.

The accused urged as justification that his wife was in Studivent's embrace, and that caused his mind to go awry and he remembered nothing more. Opposing this theory was the testimony of Frank Henry, his companion at the time, who said that the accused did not appear to be agitated or excited

at the time of the shooting; and that of Mrs. Hamilton, who said that he was as calm as an Indian, and that of the occupants of the porch, who testified that they were in a position from which the occupants of the Williamson car could be seen, and they did not see the love-making incidents which so disturbed and excited the accused.

The accused, in order to fortify his defense of provocation, testified that some time in May, 1941, Mrs. Mitchell, wife of the merchant, delivered to him a memorandum of a certain telephone number in the city of Newport News and from which a call came for his wife. His investigation of the owner of the telephone number, he alleged, disclosed a place of somewhat questionable repute and his further testimony tended to incriminate his wife and when she was confronted with the facts a confession of guilt was drawn from her and the other guilty party was Studivent. As to the telephone number, its verity might have been set at rest if Mrs. Mitchell had been called as a witness. The fact that she was not raises the presumption that her testimony would not have been favorable to the cause of the accused. As to Studivent having been a culpable party in May, both he and Eleanor Bright testified that he first met wife of the accused on June 29th, as has been before detailed.

The testimony of Leola Lovett is very significant. She said that about the first of April she heard the accused tell his wife that if he ever caught her with a man he would shoot both of them. He carried out this threat to the letter.

All of this testimony was before the jury. From it they could properly and justly infer that the accused deliberately planned to kill his wife and that he deliberately executed that plan. In view of this the defense of the accused must break down in this court as it did before the jury and the trial court. There was evidence that the accused enjoyed a good reputation for industry, peaceableness and truthfulness. But this evidently did not impress the jury as being potential in the face of an array of facts pointing to his guilt. The evidence, after a careful analysis and assessment, reveals a man of strong will power and force, but one of consuming

passion and jealousy. This has been his undoing. Under the facts and circumstances we think the jury was lenient.

[■■] The second assignment assails the ruling of the court in refusing to allow the clerk to testify that Studivent had instituted an attachment suit against the accused, based upon his injuries received from the shots fired. We do not think this ruling was erroneous. It was an attempt to introduce evidence of a collateral fact to impeach the witness, which this court has held cannot be done. *Langhorne* v. *Commonwealth*, 76 Va. 1012, 1024.

The witness Studivent was not interrogated about the matter at all. This court said in the case of *Rorer Iron Co.* v. *Trout*, 83 Va. 397, 2 S. E. 713, 5 Am. St. Rep. 285:

■■ "Though the chancellor has erroneously excluded evidence, yet if this court upon full consideration of all the evidence, including that excluded, sees no error in the decree appealed from, it will affirm it."

See also *Gordon* v. *Virginia Elec., etc., Co.*, 150 Va. 442, 143 S. E. 681; *Pickens* v. *O'Hara*, 120 W. Va. 751, 200 S. E. 746; *Fenner* v. *Commonwealth*, 152 Va. 1014, 148 S. E. 821.

What we have said with respect to the first assignment of error disposes also of the two remaining assignments.

The judgment of the trial court is affirmed.

*Affirmed.*