COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bumgardner and Frank
Argued at Alexandria, Virginia


MICHAEL JENNINGS MADDOX

MEMORANDUM OPINION[*] BY
v.    Record No. 1129-99-4     JUDGE JERE M. H. WILLIS, JR.
                                   AUGUST 1, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CLARKE COUNTY
John R. Prosser, Judge

Alexander N. Levay (Michael D. Sawyer;
Moyes & Levay, P.L.L.C., on briefs), for
appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


On appeal from his conviction of second degree murder, in

violation of Code § 18.2-32, Michael Jennings Maddox contends

(1) that the evidence was insufficient to support his conviction

of murder, (2) that the trial court erred in admitting evidence

concerning his relationship with the victim, Evelyn Jane

Tumblin, and (3) that the trial court erred in admitting

evidence that he refused to take an alkasensor test.  We reverse

the judgment of the trial court and remand the case for further

proceedings, if the Commonwealth be so advised.

_____

    * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.   Sufficiency of the Evidence

Maddox contends that because the Commonwealth did not prove that he killed Tumblin maliciously, the evidence failed to support his conviction of murder.  See Code § 18.2-32.  "Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom."  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

"Second degree murder does not require a willful, deliberate, and premeditated act; it is defined simply as a malicious killing."  Turner v. Commonwealth, 23 Va. App. 270, 274, 476 S.E.2d 504, 506 (1996).  "Whether or not an accused acted with malice is generally a question of fact . . . ."  Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997).

Tumblin and Maddox lived together in a long term relationship.  On the afternoon of February 5, 1998, they went for a ride in Maddox's four-wheel drive Ford Bronco.  The Shenandoah River had flooded its banks, covering nearby roadways with water.  With Maddox driving, the couple "drove through the water playing around."  They then went to Leesburg to run various errands.  Maddox had been drinking all day and was intoxicated.  A little before dark they returned to the river and stopped under a bridge abutment, where they engaged in

-

sexual intercourse.  For a short while thereafter, Maddox let Tumblin drive but then resumed driving.  Ignoring signs and barricades warning that the road was closed due to flooding, he drove down the flooded portion of Route 606.  The Bronco began sliding on the submerged roadway and Maddox lost control.  The Bronco became stuck on an embankment, about two hundred yards down the road and about twenty yards from the closest shore.  Frigid water flooded the passenger compartment.

Rescue personnel were dispatched to the scene.  Upon arrival, Terrell Davis saw Maddox sitting in the driver's seat of the Bronco smoking a cigarette and saw him toss a beer bottle out of the window.  When asked, Maddox initially replied that he was alone.  About fifteen minutes after the rescue workers arrived, Maddox told them that Tumblin was with him and that she had drowned.  He lifted her body from behind the front seats of the Bronco.  Rescue workers testified that he said, "She is dead.  I killed her.  She is dead."  A state trooper testified that Maddox, when asked what had happened, "stated that he had been in the water horsing around with his truck and he had killed his girlfriend."  At the same time, however, Maddox asked whether she was alright.

Maddox told witnesses that Tumblin was afraid of the water and that she "freaked out" when the Bronco slid off the road and became stuck.  He admitted hitting Tumblin, because, he explained, she was hysterical and he was attempting to calm her.

-

Melody Houff, Tumblin's sister, testified that Maddox told her Tumblin never spoke after he struck her, but that her eyes remained open.  The medical examiner determined that Tumblin died of drowning with hypothermia as a possible contributing factor.  He testified that he saw no sign that she had been struck on her face or that she had been rendered unconscious by a blow.  The only evidence that she had been struck was Maddox's statement and Houff's testimony that she noticed a bruise on her sister's right cheek at her funeral, four days after her death.

Several witnesses testified that Maddox behaved strangely at the scene of the accident, that he said he had killed Tumblin and that she had drowned, and then asked whether she was alright.  By the time the rescue workers arrived, Tumblin and Maddox had been in the frigid water long enough that both were suffering from hypothermia.  Upon his removal from the water, Maddox's oral temperature was 89.8°.  At the hospital, Tumblin's core body temperature was 89.1°, so low it was necessary to warm her body several degrees before the fact of her death could be determined.  Maddox was intoxicated, and testimony disclosed that intoxication can exacerbate the effects of hypothermia.

The malicious infliction of injury can be shown through circumstantial evidence, but "[t]he Commonwealth is . . . required to exclude hypotheses of innocence that flow from the evidence . . . ."  Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).

-

Tumblin died of drowning.  To convict Maddox of her murder, the Commonwealth must prove either that he maliciously drowned her or that he maliciously committed some act against her that caused her to drown.  The Commonwealth contends that Maddox's admission that he struck Tumblin in the face, his odd and misleading behavior when the rescue workers arrived on the scene, and his statements after his rescue that he had killed Tumblin, sufficiently prove that he killed her maliciously.  We disagree.

Maddox admitted that he struck Tumblin in the face. However, he said that he did so when she "freaked out" after the Bronco became stuck and began to fill with water.  Although Houff observed a bruise on Tumblin's face at her funeral, four days after the incident, the medical examiner saw no sign of a serious blow to her face and saw no evidence that the blow would have caused her to lose consciousness.  In admitting that he struck Tumblin, Maddox said that while she stopped talking, her eyes remained opened.  No evidence established that the blow caused Tumblin to lose consciousness.  While it might be argued that, even under the circumstances, striking Tumblin in the face was a malicious act, nothing in the record proves that it was a lethal act.  The blow itself did not kill Tumblin.  The record fails to prove that it caused her to drown.

Maddox was rude and abusive in his conversation with rescue workers.  Initially, he stated that he was alone in the truck.

-

Not until about fifteen minutes later did he acknowledge Tumblin's presence.  He may, for any of several reasons, have denied Tumblin's presence, but it does not follow from that denial that he drowned her.

In talking with rescue workers, Maddox repeatedly stated that he had killed Tumblin.  However, at the same time, he asked whether she was alright.  Under the circumstances, including Maddox's own condition, these statements were just as consistent with a remorseful acknowledgment of responsibility for having placed Tumblin in peril as a confession of murder.

Maddox's statements that he had killed Tumblin were ambiguous and were not specific acknowledgments that he had drowned her.  Only by applying an interpretation supplied by imagination can those statements be construed as acknowledgments that Maddox drowned Tumblin.  Nothing in the record supplies that interpretation.  Under the circumstances, including her hypothermia, Tumblin could have drowned other than through Maddox's agency.  Other than the single blow, which left no significant mark, the record is devoid of evidence that she suffered violence.

The evidence is insufficient, as a matter of law, to support a finding that Maddox killed Tumblin maliciously. Reckless conduct, however gross, is not murder.  See Essex v. Commonwealth, 228 Va. 273, 280-81, 322 S.E.2d 216, 220 (1984). Without such a finding, the conviction of second degree murder

-

cannot stand.  Accordingly, we reverse the murder conviction and remand to the trial court for further proceedings consistent with this opinion, if the Commonwealth be so advised.

    II.  Admission of Relationship/Prior Bad Acts

Maddox's next assignments of error relate to the admission of certain evidence.  As these issues may arise in a future proceeding, we will address them briefly.  Maddox contends that the trial court erred in admitting evidence:  (1) that he was a "mad man" after he had been drinking, (2) that he and Tumblin were observed fighting during the spring of 1992 through fall 1997, (3) that he had a drinking problem, (4) that he once tore up pieces of Tumblin's clothing, (5) that he was afraid of the magistrate, (6) that he had no fear of going to jail, (7) that he had brandished a shotgun and then shot at two inflatable animals, (8) that he carried a gun and would kill anyone who crossed him, (9) that he was on probation, (10) that he had prior DUI convictions, (11) that he was awaiting trial and sentencing on other unrelated crimes, (12) that he had attempted suicide, (13) that he had routinely degraded Tumblin, (14) that upon becoming angry, he had thrown automobile tags in Tumblin's face, (15) that he had been stopped the morning of Tumblin's death for speeding, and (16) that he often assaulted Tumblin verbally.

Maddox objected contemporaneously and properly at trial only to items, 2, 4, 7, and 14, all contained in the testimony

-

of Susan Fields.  See Rule 5A:18.  However, because any further proceedings will concern only whether Maddox committed manslaughter, evidence of his prior relationship with Tumblin will be irrelevant and should not be admitted.

III.  Admission of Refusal to Submit to Alkasensor Test

Maddox finally contends that the trial court erred in admitting testimony that he refused an alkasensor test at the accident scene.  We agree.

Maddox was indicted for aggravated involuntary manslaughter.  The indictment specified that he:

> [B]y conduct so gross, wanton, and culpable as to show a reckless disregard for human life and as a result of driving under the influence of alcohol in violation of Section 18.2-266(ii) of the Code of Virginia, 1950 as amended, did, . . . feloniously and unintentionally cause the death of Evelyn Jane Tumblin in violation of Section 18.2-36.1 of the Code of Virginia, 1950 as amended, against the peace and dignity of the Commonwealth.

Thus, his operation of the Bronco while under the influence of alcohol, in violation of Code § 18.2-266(ii), was an element of the manslaughter charge lodged against him.

Code § 18.2-268.10 provides, in relevant part:

> In any trial for a violation of Section 18.2-266 . . .
>
> [t]he failure of an accused to permit a blood or breath sample to be taken to determine the alcohol or drug content of his blood is not evidence and shall not be subject to comment by the Commonwealth at the trial of the case, except in rebuttal;

-

> nor shall the fact that a blood or breath
> test has been offered the accused be
> evidence or the subject of comment by the
> Commonwealth, except in rebuttal.

Id.

Because operating the Bronco while under the influence of alcohol is a specified element of the indictment, trial of the indictment would be trial of a charge under Code § 18.2-266(ii). Therefore, evidence that Maddox refused the alkasensor test should not be admitted if Maddox is retried for manslaughter.

Accordingly, we find the evidence insufficient as a matter of law to support Maddox's conviction of second degree murder, in violation of Code § 18.2-32. We reverse the judgment of the trial court, and remand the case for further proceedings in accordance with this opinion, if the Commonwealth be so advised.

Reversed and remanded.

-

Frank, J., dissenting.

I respectfully disagree with the majority's holding that the evidence was insufficient to convict appellant of second-degree murder and that evidence of appellant's prior bad acts and relationship with the victim was inadmissible.

"In every criminal prosecution, the Commonwealth must prove the element of corpus delicti, that is, the fact that the crime charged has been actually perpetrated." Cherrix v. Commonwealth, 257 Va. 292, 305, 513 S.E.2d 642, 651 (1999) (citing Maughs v. City of Charlottesville, 181 Va. 117, 120, 23 S.E.2d 784, 786 (1943)). If an accused has "fully confessed that he committed the crime, then only slight corroboration of the confession is required to establish corpus delicti beyond a reasonable doubt." Id. (citing Jackson v. Commonwealth, 255 Va. 625, 646, 499 S.E.2d 538, 551 (1998)). "The corpus delicti of a homicide is proof of the victim's death from the criminal act or agency of another person." Swann v. Commonwealth, 247 Va. 222, 236, 441 S.E.2d 195, 205 (1994) (citing Watkins v. Commonwealth, 238 Va. 341, 348-49, 385 S.E.2d 50, 54 (1989)). Corpus delicti may be established by circumstantial evidence. See Cochran v. Commonwealth, 122 Va. 801, 94 S.E. 329 (1917).

"Second degree murder is defined as a 'malicious killing' of another person." Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998) (citing Turner v. Commonwealth, 23 Va. App. 270, 274, 476 S.E.2d 504, 506 (1996)). "The authorities

-

are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done 'wilfully or purposefully.'"  Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984) (citing Williamson v. Commonwealth, 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942)).  In finding a defendant guilty of second-degree murder, whether the defendant acted with malice is a determination for the fact finder.  See Jacobs v. Commonwealth, 132 Va. 681, 111 S.E. 90 (1922).

I believe the evidence, viewed in the light most favorable to the Commonwealth, established the corpus delicti and supported the determination by the jury that appellant acted with malice.

Appellant was aware that the road was flooded.  The road was barricaded and signs were posted that said, "Road Closed." Despite the apparent danger, appellant drove his vehicle onto the flooded roadway.  When the rescue workers arrived at the scene, appellant tried to conceal the fact that the victim was in his vehicle, initially telling them he was alone.  Fifteen minutes later, he lifted her body from behind the front seats of the vehicle and told several rescue workers that he killed her. Furthermore, he gave inconsistent statements to the police, telling one officer the victim drove the truck into the water and drowned while he attempted to get the truck started again

-

and telling another officer that he drove the truck into the water.

The victim's sister testified that appellant recounted the events leading up to the victim's death several times. Initially, he told the victim's sister that he hugged the victim and then climbed out of the vehicle to meet the rescue people. When he reached back into the vehicle the victim was floating. On another occasion, appellant told the victim's sister he hit the victim after she became hysterical when water started to flood the passenger compartment of the vehicle. Appellant said the victim fell over onto the seat after he hit her and did not speak again. Appellant set the victim up and she fell over again. Appellant told the victim's sister she drowned when she fell out of the seat. The jury was entitled to reject the conflicting accounts of the events and believe that appellant rendered the victim unconscious, which would cause her to drown. Furthermore, the jury was not required to accept appellant's statement that the victim was hysterical. See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

Further, the jury was entitled to reject the medical examiner's testimony that there was no sign the victim had been struck or that she had been rendered unconscious by a blow. Such testimony created a factual inconsistency, which is within the province of the jury.

-

The majority holds that the evidence of appellant's prior bad acts and relationship with the victim will be inadmissible in further proceedings because it will be irrelevant to the charge of manslaughter.  Because I believe that the evidence was sufficient to convict appellant of second-degree murder, I address this issue.  As discussed by the majority, appellant properly objected to the admission of evidence that he and the victim were observed fighting during the spring of 1992 through fall 1997, that he once tore up pieces of the victim's clothing, that he brandished a shotgun at two inflatable animals, and that he threw automobile tags in the victim's face after becoming angry.

> Generally, evidence of prior offenses is inadmissible because it "confuses the issue before the jury, unfairly surprises the accused with a charge he is not prepared to meet, and tends to prejudice him in the minds of the jury."
>
> However, we have recognized specific exceptions to the rule.  We have upheld the admission of evidence of prior offenses when offered to prove (1) premeditation, (2) absence of mistake or accident, (3) motive or intent, and (4) the conduct and feelings of the accused toward his victim.

Smith v. Commonwealth, 239 Va. 243, 256, 389 S.E.2d 871, 878 (1990) (internal citations omitted).

I believe the evidence of the fighting between appellant and the victim, the evidence that appellant tore up the victim's clothing, and the evidence that appellant threw automobile tags

-

in the victim's face is admissible to show his conduct and feelings toward her. This testimony belies appellant's claim that he loved the victim.

I would exclude the evidence that appellant shot at two inflatable animals. The evidence did not establish that the inflatable animals belonged to the victim or that she was present when he shot the gun. Therefore, I believe it was error to admit the evidence that appellant shot at the inflatable animals.

> In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678 (emphasis added). "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

Because the evidence that appellant shot at the inflatable animals was offered to show the relationship between appellant and the victim, I believe the error was harmless. There was other evidence before the jury that the two had a stormy

-

relationship, which at times involved violence. Therefore, the evidence that appellant shot at the inflatable animals was merely cumulative and did not affect the jury's verdict.

Therefore, the evidence proved the corpus delicti and second-degree murder. Appellant concealed the victim from rescue personnel and then admitted killing her on numerous occasions. He also gave totally inconsistent statements to the police. Additionally, he admitted hitting her, which the jury was entitled to believe was to render her unconscious in the rising water. There was a history of fighting in the relationship, and there were specific acts of violence toward the victim by appellant.

The majority holds the evidence that appellant refused the alkasensor test should not be admitted if appellant is retried for manslaughter because operating the vehicle under the influence of alcohol is a specified element of the indictment and trial of the indictment would be a trial of a charge under Code § 18.2-266(ii). Because appellant was not convicted of manslaughter, I do not address this issue.