COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Humphreys
Argued at Chesapeake, Virginia


LARRY BARNES

                                    MEMORANDUM OPINION* BY
v.    Record No. 2685-00-1          JUDGE ROBERT P. FRANK
                                         OCTOBER 2, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Marc Jacobson, Judge

          (George A. Anderson, Jr.; Robinson, Neeley &
          Anderson, on brief), for appellant.
          Appellant submitting on brief.

          Kathleen B. Martin, Assistant Attorney
          General (Randolph A. Beales, Acting Attorney
          General, on brief), for appellee.


     Larry Barnes (appellant) was convicted in a bench trial of

second-degree murder, in violation of Code § 18.2-32.  On appeal,

he contends the evidence was insufficient to convict him of

second-degree murder.  Finding no error, we affirm the conviction.

                          BACKGROUND

     On December 24, 1999, at about 4:30 p.m., appellant was at

home preparing to cook a turkey.  His girlfriend, Sheila Gilbert,

was watching television in the den with friends, Chuck Palmer and

his girlfriend, Danielle Truss.  Gilbert's 18-year-old daughter,

Tameca Mitchell, was present, as were four of appellant's

──────────────
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

grandchildren, who were ages 5, 6, 8 and 9. Jerry Hannah, another resident, was playing chess in the living room.

When Palmer had arrived at the house two or three hours earlier, he was intoxicated. He also brought with him a 12-pack of beer. All of the adults were drinking that afternoon. Appellant, however, was drinking less than the others because he was cooking.

Palmer began "fussing" with his girlfriend, Danielle, and was "cussing because he was mad." Appellant, who was in his bedroom at this point, came out and asked Palmer to "calm down and stop the cussing." Palmer quieted momentarily but then resumed arguing with Danielle.

Appellant again came into the den, this time from the kitchen, and asked Palmer to leave, grabbing him by the shoulder and lifting him out of his chair. Palmer had been ousted from the residence the night before when he also was intoxicated. Appellant, however, was not involved in that incident.

When Palmer refused to leave, he and appellant began "tussling" against the wall, "pushing each other back and forth." Palmer hit appellant on the head with his fist, but the blow had little impact on appellant. Appellant then stabbed Palmer in the upper left chest with a knife he held in his hand, penetrating the fur-lined leather jacket Palmer was wearing. The knife used in the stabbing belonged to appellant and was about six to eight inches long.

-

Palmer told appellant he had stabbed him. It is uncontroverted that Palmer was unarmed.

Tameca Mitchell testified appellant had the knife when he left the bedroom to tell Palmer to quiet down. She said the knife was hanging by his right hip area. She further testified appellant was angry with Palmer prior to the "tussling."

After the stabbing, Palmer walked into the living room and reclined on the sofa. About ten minutes later, Hannah opened Palmer's jacket, discovered he was bleeding, and called 911.

At this point, appellant was standing in front of his bedroom, near the den, with the knife in his hand. The blade had blood on it.

Officer M.G. Boone of the Norfolk Police Department investigated the stabbing. Boone found Palmer lying on the sofa. Palmer smelled strongly of alcohol, "sounded to be snoring," and had been wounded in the upper left chest. Boone tried to arouse him, but Palmer was not responsive. His jacket, which was on the floor, had an incision in the upper left chest pocket.

The autopsy showed that Palmer died from a single stab wound to the left chest that perforated the heart. The wound was about one inch wide and three inches deep.

The testimony of Officer L.W. Achorn was stipulated at trial. When Achorn arrived at the crime scene, he saw Palmer on the sofa with a blood stain on his shirt and a puncture wound to his upper left chest.

-

When Officer Achorn asked what had happened, appellant said Palmer "swung at me and I hit him with a knife." The officer placed appellant in custody. As appellant entered the police vehicle, he said, "[I]t never would have happened if he had left when I told him to."

Investigator D.R. Norrell advised appellant of his <u>Miranda</u> rights and obtained a statement. Appellant said he had the knife in his hand because he was cutting the plastic straps off a turkey. Appellant told Investigator Norrell,

> I walked into my bedroom, and I had the knife in my hand that I had from the kitchen. I asked Chuck two or three times to stop cussing because the grandkids were around there. I asked him numerous times and he kept doing it. When I touched him on the shoulder to ask him again, he jumped up and he struck me on top the head. Then I turned around and tried to plunge my knife to make him stay away from me, and I didn't know that I had hit him. I didn't know I had touched him at all.
>
>   *     *     *     *     *     *     *
>
> It was an accident, that I was swinging at him with a knife but not trying to hit him, just trying to plunge at him to get away from me.

At trial, appellant testified his girlfriend had asked him to work on the turkey. He got his knife from its case in his bedroom because Tameca was using the only other knife in the house to cut wrapping paper for the children's toys. He said the knife "stay[ed] sharp all the time" because he needed it to cut rope on

-

his job.  Appellant asked Palmer "numerous times" to be quiet before he grabbed him by the shoulder to get his attention.

Appellant claimed he was slightly "disoriented" when Palmer hit him.  Appellant said he lunged at Palmer with the knife to keep him away.  Appellant testified he "just jabbed out with the knife," intending to stab Palmer "to warn him off," and did not know he "had even touched him."  Appellant said he had been convicted of four felonies, but after having his memory refreshed, he acknowledged five or six felony convictions.

At the conclusion of the Commonwealth's case, appellant moved to strike the evidence contending that no evidence proved malice and that appellant acted in the "heat of passion."

At the conclusion of all the evidence, appellant renewed his motion to strike the evidence but gave no reason for the motion.[1] During his closing argument, appellant again argued the absence of malice and further contended the knife was not a "dangerous weapon."

---

[1] "In a bench trial, where a defendant wishes to preserve a sufficiency motion after presenting evidence, the defendant must make a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict."  Howard v. Commonwealth, 21 Va. App. 473, 478, 465 S.E.2d 142, 144 (1995).  It is not necessary to move to set aside the verdict to preserve sufficiency for appeal.  In this case, appellant made the appropriate argument in his closing to preserve the issue.  We will, therefore, address the merits of the appeal.  Further, the Commonwealth did not argue default under Rule 5A:18.

-

The trial court held, considering the totality of the circumstances, the evidence supported a finding of second-degree murder. The court observed that no evidence supported appellant's contention that he acted out of fear or self-defense or had been dazed by Palmer's striking him on the head. The court found it incredible that appellant had not known he touched Palmer, given the depth of the knife's penetration.

Clearly, the trial court did not believe appellant. The court concluded appellant was guilty of second-degree murder because he had acted with malice and without reasonable provocation.

## ANALYSIS

Appellant contends no evidence proved malice, therefore, the evidence was not sufficient to prove second-degree murder.

> "Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Moreover, "[i]f there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).
>
> Furthermore, "[t]he credibility of a witness and the inferences to be drawn from proven

-

> facts are matters solely for the fact
> finder's determination.  In its role of
> judging witness credibility, the fact finder
> is entitled to disbelieve the self-serving
> testimony of the accused and to conclude that
> the accused is lying to conceal his guilt."
> Marable v. Commonwealth, 27 Va. App. 505,
> 509-10, 500 S.E.2d 233, 235 (1998) (citations
> omitted).

Snow v. Commonwealth, 33 Va. App. 766, 774, 537 S.E.2d 6, 10 (2000).

"Second degree murder is defined as a 'malicious killing' of another person."  Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998) (citing Turner v. Commonwealth, 23 Va. App. 270, 274, 476 S.E.2d 504, 506 (1996)), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999).  "The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done 'wilfully or purposefully.'"  Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984) (citing Williamson v. Commonwealth, 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942)).  In finding a defendant guilty of second-degree murder, whether the defendant acted with malice is a determination for the fact finder.  See Jacobs v. Commonwealth, 132 Va. 681, 685-86, 111 S.E. 90, 92 (1922).

"'The test of murder is malice.  Every malicious killing is murder either in the first or second degree -- the former if deliberate and premeditated, and the latter if not.'"  Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981) (quoting Jacobs, 132 Va. at 686, 111 S.E. at 92).  "The trier of

-

fact may infer malice from the deliberate use of a deadly weapon." Utz v. Commonwealth, 28 Va. App. 411, 415, 505 S.E.2d 380, 382 (1998).

"Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997). The trier of fact may infer malice "from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken.'" Id. (quoting Essex, 228 Va. at 281, 322 S.E.2d at 222).

Here, the evidence supports the trial court's finding of malice. Appellant, angry about Palmer's cursing in front of his young grandchildren, was unable to calm Palmer. Armed with a deadly weapon, he again approached Palmer and grabbed him out of a chair by the shoulder.

When Palmer again refused to leave appellant's residence, a "tussle" ensued. Palmer hit appellant on the head with his fist, and appellant "hit him with a knife." Appellant testified, "I tried to plunge my knife to make him stay away from me." Appellant also testified he intended to stab Palmer to "warn him off." The knife was kept sharp by the appellant, who worked with it frequently.

While the appellant stated he became disoriented after Palmer struck him on the head and he did not know the knife actually touched Palmer, the trial court was free to, and did in fact,

-

disbelieve appellant.  The trier of fact is not required to accept a party's evidence in its entirety, see Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986), but is free to believe and disbelieve in part or in whole the testimony of any witness, see Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).  The fact finder may conclude that a defendant lied to conceal his guilt.  Moore v. Commonwealth, 25 Va. App. 277, 289, 487 S.E.2d 864, 870 (1997).  See Sheppard v. Commonwealth, 250 Va. 379, 389, 464 S.E.2d 131, 137 (1995).

From the evidence, the fact finder could properly conclude that appellant was angry with Palmer for his inappropriate, inebriated behavior.  When Palmer refused to leave, appellant assaulted Palmer by grabbing him out of the chair.  When Palmer hit appellant on the head, appellant intentionally stabbed Palmer with a deadly weapon.  The trial court rejected appellant's testimony that the stabbing was accidental and that he did not intend to "hit him" with the knife.  We must defer to that factual finding.  See Snow, 33 Va. App. at 774, 537 S.E.2d at 10.

The fact finder could conclude from the evidence that appellant deliberately used sufficient force to plunge the knife deep into Palmer's chest.  The knife, six to eight inches long, pierced Palmer's fur-lined leather jacket, pierced Palmer's chest cavity and his heart, producing a wound one inch wide and three inches deep.

-

Appellant contends on brief that the trial court found the act was not malicious because it pronounced his actions were "reckless."  Appellant takes the trial court's comments out of context.  In reviewing the entirety of the trial court's comments, it is apparent that the trial court found malice.  Indeed, the trial court said, "The Court does find that there is sufficient malice . . . ."

Finding no error, we affirm the judgment of the trial court.

Affirmed.