# Staunton.

## HARRIS HANNAH v. COMMONWEALTH.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*W. L. Davidson, R. E. L. Chumbley,* and *D. F. Kennedy,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On June 9, 1928, in the town of Pennington Gap, Harris Hannah shot and killed Dana Gilbert. He was tried, found guilty of second degree murder, and sentenced to twenty years confinement in the penitentiary.

Harris Hannah and Ethel Peters were married on July 3, 1922, at Mallory, W. Va. In the latter part of May, 1928, he and his wife came to Pennington Gap on a visit to her parents. On May 31st, Hannah, in company with his father-in-law and brother-in-law, returned to West Virginia on business, and came back to the Peters home on June 3rd. On the afternoon of the preceding day, Mrs. Peters sent her daughter, Mrs. Hannah, and another daughter into town to purchase some groceries. They met by chance one Thomas, who invited them to go into the home of French Price, where he gave them a drink of whiskey. From there these two young women went out to complete their purchases. They met a cousin, George Peters, who ran a taxi, and asked him to drive them back home. This he agreed to do after he made a short trip for a fare. While waiting for his return a man named Wilson came up and asked them to go back with him to Price's to await their cousin. This they did and he also gave them a drink. He then went out, purporting to look for George Peters, and in a short time returned, reporting that he could not be found, but brought back with him Dana Gilbert and a man named Dock Tritt. Wilson helped put the girls in Gilbert's car, and told them that Gilbert would drive them home. Gilbert got some whiskey and started off, ostensibly to take them to their mother's. He then suggested a short ride, and on this drive got more whiskey which they drank until intoxicated. After some time Gilbert stopped his automobile, took Mrs. Hannah into the

woods and had intercourse with her. He then told her that he had some venereal disease, and suggested that she use a prophylactic. They after that continued to drive about aimlessly all night, and next morning he again suggested intercourse, but by this time she was measurably sober and refused.

Impelled by shame, she and her sister did not go home, but went to West Virginia where they remained until the following Wednesday, when they came back to Pennington Gap. In the meantime, Mr. Hannah returned from West Virginia early Sunday morning. His mother-in-law told him of the unexplained absence of his wife. He at once started out to look for her, and continued his search until her return. On Wednesday she told him in part what had occurred, but omitted shameful details and did not confess them until the following Saturday. Very soon after her confession he went into town and was being driven around in Wilson's automobile by him when they came by chance upon Gilbert. Gilbert and Wilson began to curse each other, but that seems to have been a case of barking dog. Gilbert then came up and stood by Wilson on the left side of the car, which was a Ford runabout. Hannah, who sat upon the right, said nothing, but got out and shooting across Wilson's face shot Gilbert twice in the region of the heart and killed him.

There are three assignments of error; two deal with instructions given at the instance of the Commonwealth, while the third is addressed to the evidence which is charged to be insufficient to sustain the conviction.

This is instruction No. 3: "Murder at common law is when a person of sound mind and discretion unlawfully kills any reasonable creature in being, and in the peace of the Commonwealth, with malice afore-

thought, express or implied. It will be observed that the essential ingredient of murder, as defined, is malice, and that it may be either express or implied malice. Express malice does not mean, necessarily, malice expressed in words, but is defined to be when the act is done with a sedate and deliberate mind and formed design, which condition of the mind and formed design being a mental condition and not ordinarily susceptible of other kinds of proof, may be evidenced by the external circumstances attending the execution of the act; such as, for instance, lying in wait, seeking an opportunity, preparation, or of like import, and need not be any special duration before the mortal blow or shot. Implied malice is where the law implies malice from the act iself, from which death ensues, for instance, where one, without any sufficient provocation at the time and without warning, kills another, malice is presumed from want of provocation."

Unquestionably the evidence for the defendant does not sustain such a charge, but on behalf of the Commonwealth it was claimed that the homicide was not the result of passion, but was cold-blooded and deliberate. The Commonwealth was entitled to have that theory presented to the jury.

In *Oliver* v. *Commonwealth*, 151 Va. 533, 542, 145 S. E. 307, 309, this court said: "Its soundness as a proposition of general law is conceded, but it is insisted that it applies only when the killing is intentional, and has no application to the case at bar, in that the evidence shows here an accident only.

"Unquestionably, the defendant's evidence does tend to show this, and if that evidence was all the evidence, this instruction would be wrong; but it is also true that the Commonwealth is entitled to instructions based upon its theory of the case supported by its evi-

dence. That evidence tends to show some difficulty between the deceased and the accused shortly before the homicide, and it tends to show that when Oliver returned to Ruckersville he called Haney to him and deliberately shot him as he came. If this was true, the murder was deliberate and the killing was intentional. Such a situation made this instruction entirely proper."

We find no error here.

Complaint is made of this instruction: "The court instructs the jury that if they believe from the evidence that the prisoner, at the time he fired the fatal shots, was acting in the heat of passion engendered by disclosures made to him by his wife of her adulterous intercourse with the deceased as well as from information previously received from other sources, and that a sufficient time had not elapsed since said disclosures were made and information received by him for the passions engendered thereby to cool and subside, then the killing is murder in the second degree. But if the jury believe from the evidence that a sufficient time had elapsed since the disclosures were made to him for the passions engendered thereby to cool and subside and that afterwards the defendant went to the place of encounter armed with a deadly weapon for the purpose of killing the deceased on account of the said alleged adulterous intercourse of the deceased with the defendant's wife, and did kill him on that account wilfully and with malice and premeditation, the said defendant is guilty of murder in the first degree."

Lord Coke thus defines, or rather describes, murder: "When a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, either express or implied."

■■ In Virginia, murder is by statute divided into two classes. Every unlawful homicide is presumed in law to be murder in the second degree; that is to say, it is presumed to have been done with malice. To elevate the offence to murder in the first degree, the Commonwealth must in addition show that it was done deliberately, but whether it be first or second degree murder, malice either express or implied must appear. There can be no murder without it. This is recognized by the Commonwealth. In the brief filed on its behalf it is said: "It is true that it would have perhaps been better for the court to have stated that the acts of the accused must be accompanied by malice, but it is submitted that when instruction No. 4, given at the instance of the Commonwealth, and instructions Nos. 3 and 4, given at the instance of the accused, are read in connection with this instruction, the jury could not have been misled into believing that the accused was guilty of murder in the second degree if he killed the deceased without malice and in the heat of passion engendered by the disclosures referred to in the instruction."

If it be true that the jury was elsewhere properly instructed, that would not remedy the situation, for this instruction in unambiguous language tells it that death inflicted for a gross affront and in heat of passion is, as a matter of law, second degree murder. Where there is such conflict, no one can say which instruction guided the jury to its verdict. *Mitchell* v. *Commonwealth*, 141 Va. 541, 127 S. E. 368; *Covington* v. *Commonwealth*, 136 Va. 655, 116 S. E. 462.

In *Brown* v. *Commonwealth*, 86 Va. 466, 10 S. E. 745, 747, the trial court gave this instruction: "The court instructs the jury that if they believe the accused killed J. B. Heflin with malice aforethought, but in

sudden transport of passion, or heat of blood, on provocation given by said Heflin, they must find the accused guilty of murder in the second degree."

The expression "malice aforethought" is used. Such is a synonym for deliberate malice. Homicide so prompted is murder in the first degree. The court, however, told the jury that their verdict should be murder in the second degree, or to restate the proposition it is said that to kill with malice in the heat of passion on reasonable provocation is second degree murder. Judge Lewis, speaking for the court, said: "This instruction also is erroneous. To speak of a homicide as having been committed with malice aforethought, and in sudden passion upon reasonable provocation, is a legal solecism. 'Malice aforethought' implies a mind under the sway of reason, whereas 'passion' whilst it does not imply a dethronement of reason, yet is the *furor brevis*, which renders a man deaf to the voice of reason; so that, although the act was intentional of death, it was not the result of malignity of heart, but imputable to human infirmity. Passion and malice are, therefore, inconsistent motive powers, and hence an act which proceeds from the one, cannot also proceed from the other.

"As was said by Gaston, J., speaking for the court, in *State* v. *Johnson*, 1 Ired. [23 N. C.] 354 [35 Am. Dec. 742]: 'There can be no such thing in law as a killing with malice, and also upon the *furor brevis* of passion; and provocation furnishes no extenuation, unless it produces passion. Malice excludes passion. Passion presupposes the absence of malice. In law they cannot co-exist.' Therefore, if an act of killing, prompted by malice, would be murder, it is only manslaughter when it springs from passion. 2 Bish. Crim. Law (7th ed.), section 697; *Preston* v. *State*, 25 Miss. 383; *Murphy* v.

*Staie*, 31 Ind. 511; *Stokes* v. *State*, 18 Ga. 17; *Commonwealth* v. *Whitler*, 2 Brewst. [Pa.] 388; *People* v. *Milgate*, 5 Cal. 127; *State* v. *Johnson*, 3 Jones Law (N. C.), 266.

"The instruction confounds these elementary principles of criminal law, and the necessary result was to confuse and mislead the jury." See also *Richardson* v. *Commonwealth*, 128 Va. 691, 104 S. E. 788; *Brown* v. *Commonwealth*, 138 Va. 807, 122 S. E. 421.

■ Although malice is presumed when the homicide is unaccompanied by circumstances of palliation, yet when the provocation appears to be gross, and when the act is impelled by it and done in passion, this presumption, as a matter of law, does not obtain. If its existence be a legal possibility in such circumstances, certainly the burden is upon the Commonwealth to show it. Indeed, as Judge Lewis observed, it is a legal solecism.

■ Both passion and adequate provocation must co-exist. Anger is not sufficient nor passion, lightly founded. *Honesty's Case*, 81 Va. 289. When both are present and death is inflicted without malice, we have a typical case of voluntary manslaughter.

It is true that in *Watson* v. *Commonwealth*, 87 Va. 608, 13 S. E. 22, such an instruction was tendered on behalf of the defendant and was given with some immaterial changes inserted by the court. So changed, exception was taken. Error, therefore, if committed, was invited. Why tendered at all by the accused is not clear, although it is possible that dismayed by the force of the Commonwealth's evidence, he angled for a second degree verdict. There three or four weeks passed between the insult and the murder, and so no question of want of control was really presented. The accused was sane and had ample time in which to control his emotions, instead of which he nursed his wrath

to keep it warm. It is interesting to note that even in that case two judges dissented. When we remember how totally dissimilar the facts there were to the case in judgment here, we are of opinion that it should not control.

The instruction to which this assignment of error is addressed was prejudicial and should not have been given.

Since this case must be retried, there is no occasion to restate the moving tale of unmeasured wrong disclosed by the record. It is remanded for a new trial to be had in harmony with the views here expressed.

*Reversed and remanded.*