COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Fitzpatrick and Annunziata
Argued at Richmond, Virginia


MICHAEL JOHN CANIPE
                                         OPINION BY
v.   Record No. 1669-96-2          JUDGE LARRY G. ELDER
                                      OCTOBER 14, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                 Paul M. Peatross, Jr., Judge

          Francis McQ. Lawrence (Charles Y. Sipe;
          St. John, Bowling & Lawrence, on briefs), for
          appellant.

          Eugene Murphy, Assistant Attorney General
          (James S. Gilmore, III, Attorney General;
          Margaret Ann B. Walker, Assistant Attorney
          General, on brief), for appellee.


     Michael John Canipe (appellant) appeals his conviction of

second degree murder.  He contends (1) that the trial court erred

when it prohibited him from offering testimony and making

arguments regarding the crime of "hit and run"; (2) that the

trial court erred when it excluded the testimony of a potential

witness regarding the victim's character for aggression; and

(3) that the evidence was insufficient to prove that he was

guilty of murder.  For the reasons that follow, we affirm.

                              I.

                            FACTS

     Around 7:30 p.m. on February 14, 1995, both appellant and

the victim were driving on the "250 bypass" near Charlottesville

to a local shopping mall.  Appellant was driving with his wife

and child, and the victim was driving to meet his wife at the

mall.

The cars were near each other as they approached the exit for Park Street, which was the road that eventually led to the mall. The victim was in the right lane preparing to exit onto Park Street. Appellant was in the left lane next to the victim, traveling "fast" and talking with his wife. Appellant suddenly realized he was passing the Park Street exit and, from the left lane, "made a quick right-hand turn to get over to the ramp." In doing so, appellant "cut off" the victim and forced the victim to sharply apply his brakes. Both cars proceeded up the exit ramp and turned right onto Park Street.

The portion of Park Street on which appellant and the victim initially traveled is a two-lane road with a painted, "double yellow" line separating the two lanes. Shortly after turning onto Park Street, the victim sped past appellant by moving his car across the double yellow line and into the lane designated for oncoming traffic. The victim then pulled his car in front of appellant's and slowed down to a speed of between 15 and 20 miles per hour. The speed limit for Park Street is at least 35 miles per hour. Appellant proceeded to drive close to the victim's rear bumper, and at one point, the victim sharply applied his brakes, causing appellant to sharply apply his.

When appellant and the victim reached the point where Park Street becomes a four-lane road with two lanes designated for traffic in each direction, appellant passed the victim in the

left lane, pulled in front of him, and slowed his car down. Appellant and the victim then engaged in a "cat and mouse game." The victim would move his car over to the left lane in an attempt to pass appellant, and appellant would move over to the left lane and block the victim's path. The victim responded by driving close to appellant's rear bumper. Appellant and the victim continued driving in this fashion until they reached the left hand turning lane at the intersection that led to the parking lot of the shopping mall. A driver who passed appellant and the victim during this time testified that "you could tell they were mad." Appellant later testified that he was upset because the victim had passed him by crossing a double yellow line.

When appellant and the victim reached the stoplight adjacent to the shopping mall, appellant pulled into the left-hand turning lane and stopped his car several feet short of the intersection. The victim pulled in behind him. Appellant exited his car and walked back to the victim's car. He yelled at the victim, kicked his driver's side door, and told him to get out of his car. The victim remained in his car and motioned to the mall parking lot. Appellant later testified that he was "pretty mad" and "angry" at the victim and "might have been ready to fight" him.

Appellant returned to his car and turned left into the parking lot of the shopping mall, which was "basically empty." Appellant's wife started yelling at him about the incident.

Appellant drove his car by the mall, turned into an area of the parking lot, "circled back around," and stopped his car. He remained in his car with the motor running. Less than a minute later, the victim pulled up in his car. The victim "jumped" out without turning off his headlights, "threw down" his jacket, and started walking toward appellant's car. The victim did not display a weapon and was unarmed. Appellant became scared when he noticed that the victim was much larger than him and that the victim's face looked angry.

The victim continued to walk toward appellant's car, and appellant decided to abandon the confrontation and drive away from the parking lot. Although appellant could have left the scene by backing away from the victim or by driving to the left or right of him, appellant drove toward the victim, accelerated his car to a speed of 15 miles per hour, and hit him. Appellant did not apply the brakes or attempt to turn before striking the victim. The impact of the victim's right shoulder on the windshield made a large indention of shattered glass in the shape of a half moon. The victim rolled off of appellant's hood and landed on the pavement. He died of a "closed head" injury three days later. Appellant sped from the parking lot without stopping to check on the victim's condition.

Appellant drove straight to his home and parked his car in his driveway. He became aware of media coverage of the incident involving him and the victim, and the next day he parked his car

in his garage and closed the garage door.  A few days after the incident, appellant called a local glass shop to purchase a windshield to replace the one damaged by the impact of the victim's body.  He later testified that he planned to install the windshield himself "so [he] could correct the damage before anybody found it."  Appellant enlisted the help of a friend to complete this project.  He told his friend that the windshield had been damaged "during a fight out at the mall" when his opponent had confronted him with a crowbar and struck his windshield with the tool.

Appellant and his friend purchased a replacement windshield from the glass shop on February 17.  Unknown to appellant, an array of police officers in plain clothes and unmarked cars were surveilling the glass shop when he made the purchase.  After appellant and his friend left the glass shop, several officers followed them as they drove to appellant's house.  Appellant was arrested at his home later in the day on February 17 and taken to the police station.  Later that evening, appellant falsely told a police officer that the victim was carrying a tire iron when he approached appellant in the parking lot.

Appellant was charged with murdering the victim.  At his trial, appellant's lawyer made several references to the crime of "hit and run."  During his <u>voir</u> <u>dire</u> of the jury, appellant's counsel asked:

> The evidence will show that [appellant] was
> guilty of a serious crime, and that's the
> crime of hit and run, leaving the scene of a

personal injury. Would any of you have difficulty acquitting [appellant] of any crime, that is finding him not guilty, even though you believe he committed a serious crime, but it's not a crime he's charged with?

Appellant's counsel referred to this question during his opening statement. Then, during his motion to strike following the conclusion of the Commonwealth's evidence, appellant's counsel argued:

[W]e think even in the light most favorable to the Commonwealth that the Commonwealth fails to present a prima facie case. We have ample evidence in this case, Your Honor, as I suggested at voir dire, of a . . . serious charge of hit and run.

The trial court responded by saying:

Hit and run is not before this Court. I don't think you should argue some other crime when we're addressing only a charge of murder.

The Commonwealth subsequently made a motion in limine to prohibit appellant's counsel from eliciting testimony or making arguments regarding the crime of "hit and run." Appellant conceded that he should not offer any evidence or testimony regarding "hit and run" but argued that prohibiting him from referring to this crime unduly restricted the scope of his closing argument. The trial court ruled that appellant's counsel could not use the term "hit and run" in his closing argument but that he could "argue that [appellant] did something else wrong." Appellant's counsel objected to this ruling. The Commonwealth's

-6-

attorney then moved the court to order appellant's witnesses to refrain from referring to "hit and run," and the trial court responded:

> Well, [appellant's counsel has] already agreed to that and I so ruled that his witnesses won't address an offense of hit and run or use the words hit and run.

Appellant's counsel did not disagree with the trial court's characterization of his position.

Near the end of his case, appellant's counsel informed the trial court that he had recently learned of a witness who would testify regarding the victim's character for aggression. He proffered her testimony for the record. He stated that the witness would testify that twice within the six months prior to the victim's death, the victim had followed the witness home in his automobile and confronted her about her driving in excess of the speed limit. The witness would also testify that the victim's demeanor was "angry and abrupt" and "confrontive and abusive" and that she was "frightened by what he did." Appellant argued that even though "[t]his is not a self-defense case," evidence of the victim's character for aggression is admissible because the issue of who was the aggressor in the mall parking lot -- appellant or the victim -- was a material issue for the jury. The trial court denied appellant's request to offer this evidence of the victim's character because appellant had not established a foundation of self-defense.

At the conclusion of the Commonwealth's case-in-chief and

again after his evidence, appellant made a motion to strike.  The trial court denied both motions.  A jury convicted appellant of second degree murder and sentenced him to a prison term of ten years.

II.

TESTIMONY AND ARGUMENT REGARDING THE CRIME OF "HIT AND RUN"

Appellant contends that the trial court abused its discretion when it prohibited him from offering testimony and making arguments regarding the crime of "hit and run." We disagree.

First, we agree with the Commonwealth that appellant failed to preserve for appeal his argument that the trial court erroneously prohibited the introduction of <u>testimony</u> regarding the crime of "hit and run." Appellant did not object to the trial court's ruling excluding such testimony. <u>See</u> Rule 5A:18. During his argument on the Commonwealth's motion in limine, appellant's counsel conceded that witnesses should not testify about the crime of "hit and run" "because that's not the charge." When the trial court stated that appellant agreed with its ruling prohibiting testimony about "hit and run," appellant's counsel did not object.

We also hold that the trial court's decision to prohibit appellant's counsel from referring to the specific crime of "hit and run" during his closing argument was not an abuse of discretion.

> The purpose of closing argument is to summarize the evidence for the jury, to persuade the jury to view the evidence in the light most favorable to the client, and to apply that evidence to the law in a manner which will result in a verdict favorable to the client.

Charles E. Friend, The Law of Evidence in Virginia § 21-1(b)(1) (4th ed. 1993). The decision regarding the appropriateness of a closing argument is committed to the discretion of the trial court. See Griffin v. Commonwealth, 22 Va. App. 622, 624, 472 S.E.2d 285, 287 (1996); see also O'Dell v. Commonwealth, 234 Va. 672, 703, 364 S.E.2d 491, 509 (1988) (citing Jordan v. Taylor, 209 Va. 43, 51, 161 S.E.2d 790, 795 (1968)) (stating that a trial court has broad discretion in the supervision of closing arguments).

> This [C]ourt will not interfere with the exercise of this broad discretion unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced.

Cohen v. Power, 183 Va. 258, 262, 32 S.E.2d 64, 65 (1944).

We cannot say that the trial court abused its discretion when it prohibited appellant's counsel from making arguments regarding the crime of "hit and run" during his closing argument. Such arguments were not relevant to the charge for which appellant was on trial and would have confused the issues before the jury. Consistent with the purpose of closing argument, appellant's counsel was entitled to make the full range of arguments relevant to persuading the jury that appellant was not guilty of the crime of which he was charged. However, appellant was not charged with "hit and run" and that crime is not a lesser included offense of murder. The argument that appellant was guilty of "hit and run" had no bearing on whether the

–10–

Commonwealth had proven beyond a reasonable doubt that appellant was guilty of murder.  In addition, the trial court's provision in its ruling that appellant's counsel could argue that "[appellant] did something else wrong" furnished appellant's counsel with sufficient latitude to advocate fully for his client in his closing argument.

### III.
### EXCLUSION OF TESTIMONY

### REGARDING THE VICTIM'S CHARACTER FOR AGGRESSION

Appellant contends that the trial court erred when it refused to admit testimony about the victim's prior aggressive conduct toward another driver.  We disagree.

A criminal defendant may offer evidence regarding the victim's character for violence, turbulence, or aggression for two purposes:  (1) to show "who was the aggressor" or (2) to show "the reasonable apprehensions of the defendant for his life and safety."  Randolph v. Commonwealth, 190 Va. 256, 265, 56 S.E.2d 226, 230 (1949); see also 1A, 2 John H. Wigmore, Evidence § 63, 63.1, 246 (Tillers rev. 1983).  However, it is well established that such evidence of the victim's character is admissible only when the defendant "adduces evidence that he acted in self-defense."  Jordan v. Commonwealth, 219 Va. 852, 855, 252 S.E.2d 323, 325 (1979); see also Burford v. Commonwealth, 179 Va. 752, 767, 20 S.E.2d 509, 515 (1942) (stating that evidence of a victim's character for violence "is admissible only when the defendant has interposed a plea of self-defense . . . , and when

a proper foundation is laid by proof of some overt act justifying such defense"); Mealy v. Commonwealth, 135 Va. 585, 596, 115 S.E. 528, 531 (1923) (stating that evidence of the victim's "quarrelsome, dangerous, and ferocious" character was not admissible "because there was no foundation in the case for the theory of self-defense"); Harrison v. Commonwealth, 79 Va. (4 Hans.) 374, 379 (1884) (stating that evidence of the victim's "brutal and ferocious" character is inadmissible "where no case of self-defence has been made out").  If the defendant has established prima facie evidence of self-defense, then the evidence of the victim's character must also satisfy additional tests of relevance.  See Randolph, 190 Va. at 265, 56 S.E.2d at 230 (stating that the test of relevance depends upon the purpose for which the evidence of the victim's character is offered); see also Barnes v. Commonwealth, 214 Va. 24, 26, 197 S.E.2d 189, 190 (1973).

We hold that the trial court did not err when it excluded the testimony regarding the victim's prior aggressive conduct. The record indicates that appellant did not establish the foundation of self-defense that is required before evidence of the victim's character for aggression is admissible.  At trial, appellant conceded that "[t]his is not a self-defense case." Because a review of the evidence discloses no overt act on the part of the victim that would justify a plea of self-defense by appellant, the exclusion of appellant's evidence regarding the

victim's character for aggression was not erroneous.  <u>See</u> <u>Jordan</u>, 219 Va. at 855-56, 252 S.E.2d at 325-26.

IV.

SUFFICIENCY OF THE EVIDENCE

It is undisputed that appellant caused the victim's death by hitting the victim with his car on February 14, 1995 between 7:30 p.m. and 8:00 p.m. in the parking lot of the shopping mall.  On appeal, appellant contends that the evidence was insufficient to prove that he acted with malice when he drove into the victim. He argues that this Court should reverse his conviction and remand for a new trial on a charge no greater than voluntary manslaughter.  We disagree.

In Virginia, criminal homicide is divided into two categories:  murder and manslaughter.  See Moxley v. Commonwealth, 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953). "Murder" is the unlawful killing of another with malice.  See Thomas v. Commonwealth, 186 Va. 131, 139, 41 S.E.2d 476, 480 (1947) (citing Scott v. Commonwealth, 143 Va. 510, 519, 129 S.E. 360, 363 (1925)).  "Manslaughter, on the other hand, is the unlawful killing of another without malice."  Barrett v. Commonwealth, 231 Va. 102, 105, 341 S.E.2d 190, 192 (1986) (citation omitted).

Malice is an essential element of murder and is what distinguishes it from the crime of manslaughter.  See Rhodes v. Commonwealth, 238 Va. 480, 485, 384 S.E.2d 95, 98 (1989) (citing Moxley, 195 Va. at 157, 77 S.E.2d at 393).  The element of malice requires the Commonwealth to prove that the accused committed the

homicide "wilfully or purposefully." See Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984) (citing Williamson v. Commonwealth, 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942)).

> Malice may be either express or implied . . . . "Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.' . . . Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation; . . . ."

Id. (citation omitted). Implied malice may be inferred from "conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken." Id. at 281, 322 S.E.2d at 220. Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence. See Pugh v. Commonwealth, 223 Va. 663, 667, 292 S.E.2d 339, 341 (1982); Painter v. Commonwealth, 210 Va. 360, 364-65, 171 S.E.2d 166, 170 (1969) (citing Bradshaw v. Commonwealth, 174 Va. 391, 401, 4 S.E.2d 752, 756 (1939)).

> In making the determination whether malice exists, the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death or great bodily harm, and whether it was volitional or inadvertent . . . .

Essex, 228 Va. at 282, 322 S.E.2d at 221.

"To reduce a homicide from murder to voluntary manslaughter,

-15-

the killing must have been done in the heat of passion and upon reasonable provocation."  Barrett, 231 Va. at 105-06, 341 S.E.2d at 192 (citing Martin v. Commonwealth, 184 Va. 1009, 1016-17, 37 S.E.2d 43, 46 (1946)).  "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice."  Id. at 106, 341 S.E.2d at 192 (citations omitted).

"Heat of passion" refers to "the furor brevis which renders a man deaf to the voice of reason."  Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929).  In order to show that a killing occurred in the heat of passion, the evidence must prove the simultaneous occurrence of both "reasonable provocation" and "passion."  See Martin, 184 Va. at 1016, 37 S.E.2d at 46.  "Heat of passion is determined by the nature and degree of the provocation and may be founded upon rage, fear, or a combination of both."  Barrett, 231 Va. at 106, 341 S.E.2d at 192 (citations omitted).

> A reasonable provocation is always necessary to reduce a felonious homicide, committed upon sudden provocation, from the degree of murder . . . to that of manslaughter; . . . . Words alone, however insulting or contemptuous, are never a sufficient provocation to have that effect . . . .

Read v. Commonwealth, 63 Va. (22 Gratt) 924, 938 (1872). Generally, whether a killing was done in the heat of passion upon reasonable provocation is a question of fact.  See Barrett, 231 Va. at 106, 341 S.E.2d at 192.

> Only when the trial court, giving the

> defendant the benefit of every reasonable
> inference from the evidence, can say that the
> minds of reasonable men could not differ does
> the question become a question of law.

McClung v. Commonwealth, 215 Va. 654, 656, 212 S.E.2d 290, 292 (1975) (citations omitted).

When considering the sufficiency of the evidence on appeal to support a criminal conviction, this Court views the evidence in the light most favorable to the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its judgment for that of the trier of fact. Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). Instead, the jury's verdict will not be set aside unless it appears that it is plainly wrong or without supporting evidence. Code § 8.01-680; Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

We hold that the evidence was sufficient to support the jury's conclusion that appellant acted with malice when he struck the victim with his car. The evidence regarding appellant's conduct before, during, and after the incident established that appellant willfully and deliberately engaged in a cruel act that was likely to cause great bodily harm to the victim. Prior to the incident in the mall parking lot, appellant and the victim had angered each other while engaging in a "cat and mouse game" of aggressive driving. When appellant confronted the victim at the stoplight near the entrance to the mall, the victim motioned toward the mall parking lot. Appellant then drove into the

parking lot, parked his car, and remained in it with the motor running.  The victim pulled up in his car less than a minute later, "jumped" out, and started walking toward appellant's car. Appellant responded to the victim's approach by driving his car straight toward the victim and striking him.  Appellant neither applied his brakes nor attempted to turn before hitting the victim.  The evidence established that the parking lot was "basically empty" and that appellant could have avoided the victim by backing up or by driving to the left or right of him. Appellant's decision to drive toward the victim when he could have exited the parking lot by driving in other directions and the fact that he never applied his brakes support the conclusion that he deliberately struck the victim with his car.

Appellant's actions after hitting the victim further support the conclusion that he acted with malice.  Rather than stopping his car to check on the victim's condition, appellant sped from the parking lot and drove home.  He then attempted to conceal his role in the incident by attempting to purchase and install a windshield to replace the one damaged by the impact of the victim's body.  He also falsely told both his friend and a police officer that the victim was carrying a crowbar as he approached appellant in the parking lot.

In addition, the evidence supports the jury's conclusion that appellant was not acting in the heat of passion when he drove his car into the victim.  The victim's approach toward

appellant in the parking lot did not constitute the reasonable provocation that establishes a heat-of-passion defense and reduces a charge of murder to manslaughter. The evidence proved that the victim merely walked toward appellant after exiting his car. The victim did not display a weapon and, other than his large size and infuriated expression, did not appear threatening to appellant. In addition, appellant was sitting in the driver's seat of a running automobile in a sparsely-occupied parking lot at the time of the victim's approach. The record established that appellant could have driven to the right or to the left of the victim or backed the car away from him. Although appellant and the victim had minutes earlier been enmeshed in a fit of "road rage" spurred by each other's aggressive driving, such conduct alone does not render a reasonable person "deaf to the voice of reason." Hannah, 153 Va. at 863, 149 S.E. at 421. Moreover, the evidence of the victim's nonviolent, nonthreatening confrontation of appellant in the parking lot supports the jury's conclusion that appellant was not reasonably provoked to drive his car into the victim.

For the foregoing reasons, we affirm the conviction of second degree murder.

Affirmed.