COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Senior Judge Duff
Argued at Richmond, Virginia


RAMON ANTWAIN PAGE

                                        MEMORANDUM OPINION[*] BY
v.  Record No. 1230-97-2               JUDGE JAMES W. BENTON, JR.
                                               JULY 14, 1998
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Ernest P. Gates, Judge Designate

            Patricia P. Nagel, Assistant Public Defender
            (David J. Johnson, Public Defender, on
            brief), for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.



        Ramon Antwain Page was convicted by a jury of second degree

murder and use of a firearm in the commission of murder.  On

appeal, he contends that the evidence was insufficient to prove

malice.  We disagree and affirm his convictions.

                                   I.

        When considering the sufficiency of the evidence on appeal

in a criminal case, this Court views the evidence in the light

most favorable to the Commonwealth and gives it all reasonable

inferences fairly deducible therefrom.  See Higginbotham v.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  So

viewed, the evidence proved that on the morning of Monday, August

5, 1996, Aaron Wallace, the owner and founder of A-1 Technical

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Services, was scheduled to travel to Maryland with Janet Williams, the company's marketing director, to sign documents for the largest contract the company had received during Williams' tenure as marketing director. Wallace had discussed the trip with Williams over the weekend.

Wallace arrived at his office at 8:15 a.m. accompanied by Ramon Page. Barbara Hoover, the office manager who kept Wallace's calendar, testified that Wallace was not scheduled to meet with Page that morning. Page, who was described as Wallace's business partner, had worked with Wallace on various asbestos removal projects during the previous two years. Page did not have an office in the building but was a frequent visitor to the office, usually arriving without an appointment.

Hoover testified that Wallace and Page appeared angry by the way they walked and the looks on their faces. Wallace dropped a receipt on Hoover's desk and told her he needed to be reimbursed. As Wallace and Page walked to Wallace's office, they were not talking to each other.

After Wallace and Page entered Wallace's office and shut the door, Hoover and Christina Devine, another employee, immediately heard the men shouting and arguing. Although the shouting continued for about five minutes, Hoover and Devine did not specifically hear anything either of the men was saying. They did not hear any sounds of a physical struggle. Suddenly, Hoover heard Wallace loudly shout, "Man, are you crazy?" Hoover and

Devine then heard a popping noise followed by several more popping noises.

After Page departed, the employees entered the building shouting for Wallace. Williams went into Wallace's office and found Wallace face up in the shower stall of the bathroom adjacent to his office. She checked for a pulse but found none. Devine saw shell cases on the floor and smelled an odor similar to burning sulfur. Devine also checked for a pulse and noticed blood on Wallace's shirt.

Hoover and Devine ran out of the building and stood in the alcove of the adjacent office. When Williams and another co-worker arrived in the parking lot, Hoover and Devine shouted a warning to them not to enter the building. After a period of silence, Page exited the building carrying a gun. He closed the door behind him, walked "calmly, looking straight ahead," and glanced at Hoover and Devine. Page then entered his car and drove away.

The forensics officer who analyzed and photographed the office testified that he saw no signs of a physical altercation. No furniture was overturned in Wallace's office, and no papers were sprawled about the floor. Bullet cases were found throughout the office leading to the adjacent bathroom. Bullets were lodged in various places around the room. The desk was scarred by a bullet, and two bullet holes were found in the shower stall.

A forensic scientist testified that he found gunpowder residue on both of Wallace's hands. The forensic scientist testified that residue might be found on a person's hands if the person fired a weapon, handled a weapon which had been discharged, or was in close proximity to the discharge of a weapon. The scientist testified that because it is so common to find residue on the hands of a shooting victim, he typically does not analyze such residue, especially if the victim has been shot multiple times.

The medical examiner testified that Wallace was shot a minimum of twelve times. The medical examiner further testified that the direction and placement of the wounds were consistent with movement by Wallace and Page during the shooting. Wallace was shot in the head, chest, side of the body, arms, back, abdomen, leg, and hand. None of the wounds were contact wounds made by a gun being discharged against Wallace's skin. The medical examiner found no abrasions or bruises on Wallace's body, including his hands, or any other evidence to indicate a struggle. He testified that Wallace died from a gunshot wound through his heart that caused him to bleed to death.

The jury found Page guilty of second degree murder and use of a firearm in the commission of murder, and the jury recommended a sentence of twenty-two years on the murder conviction. The judge entered judgment on that verdict and sentenced Page to a mandatory three years on the firearm

conviction.

II.

Page contends that the evidence was insufficient to prove malice. He argues that the Commonwealth did not exclude the reasonable hypothesis that he acted in the heat of passion upon reasonable provocation. We disagree.

Malice is the element that distinguishes murder from manslaughter. See Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992). Malice "'may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury.'" Christian v. Commonwealth, 221 Va. 1078, 1081, 277 S.E.2d 205, 207 (1981) (citation omitted). The trier of fact may infer malice from the deliberate use of a deadly weapon unless the evidence raises a reasonable doubt whether malice existed. See Compton v. Commonwealth, 219 Va. 716, 730, 250 S.E.2d 749, 758 (1979); Morris v. Commonwealth, 17 Va. App. 575, 578, 439 S.E.2d 867, 870 (1994). The uncontradicted evidence proved Page fired the gun that killed Wallace and shot Wallace twelve times.

"To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon

reasonable provocation." Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986). "Virginia has long recognized that malice and heat of passion [are mutually exclusive]." Hodge v. Commonwealth, 217 Va. 338, 345, 228 S.E.2d 692, 697 (1976). Heat of passion refers to "the furor brevis, which renders a man deaf to the voice of reason." Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929). "Heat of passion is determined by the nature and degree of the provocation, and may be founded upon rage, fear, or a combination of both." Barrett, 231 Va. at 106, 341 S.E.2d at 192 (citations omitted).

The evidence proves that both Wallace and Page appeared angry as they entered the building. They began arguing loudly once inside Wallace's office. However, anger alone is not enough to prove heat of passion. To establish heat of passion, the evidence must prove both that the act was committed with passion and that it was based upon reasonable provocation. See Martin v. Commonwealth, 184 Va. 1009, 1016, 37 S.E.2d 43, 46 (1946); Canipe, 25 Va. App. at 643, 491 S.E.2d at 753. To determine whether provocation is reasonable, "it is necessary to consider the nature and degree of the provocation as well as the manner in which it was resisted." Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987).

Page contends that the evidence permits the reasonable inference that he was angered and reasonably provoked because

Wallace was taking Williams, the marketing director, and not Page, with Wallace to execute the contract documents in Maryland. Although the evidence proves that Wallace and Williams intended to travel to Maryland in connection with the contract and that Wallace and Williams had discussed the trip the weekend prior to the killing, nothing in the record supports Page's hypothesis that Wallace was excluding Page either from the business trip or from the benefits of the contract.

The record is silent regarding the nature of the dispute between the men. There is no evidence in the record from which the fact finder could have inferred that Wallace and Page had planned to travel to Maryland together, that Wallace had invited Williams instead, and that Wallace had deliberately excluded Page from the trip. No evidence proved that either the contract or the business trip was the source of Page and Wallace's argument.

"'A reasonable provocation is always necessary to reduce a [murder] . . . to . . . manslaughter; and especially where the offense is committed with a deadly weapon.'" Martin, 184 Va. at 1017, 37 S.E.2d at 46 (citation omitted) (emphasis deleted). The principle is long standing that "'[w]ords alone, however insulting or contemptuous, are never a sufficient provocation'" for one to kill another and claim that the act arose from the heat of passion. Id. (citation omitted). See Caudill v. Commonwealth, 27 Va. App. 81, 85, 497 S.E.2d 513, 515 (1998). The evidence proved only that Wallace and Page shouted and argued

before Page shot Wallace.

Page further contends that the evidence is consistent with the men having struggled over control of the weapon and the weapon discharging during the struggle. Page points to an indentation found on the desk in Wallace's office and the gunpowder residue on Wallace's hands to support this contention. Although no evidence proved that Page had the gun with him when he entered the office, the hypothesis of a struggle does not flow from the evidence.

The witnesses heard no sounds of a struggle. No furniture was overturned. No papers were strewn about. The medical examiner's testimony together with the location of the bullet cases and bullets tend to prove that Wallace was shot while he retreated from his office into the adjacent bathroom. Wallace had no physical markings on his body, such as bruises or scratches, to indicate a struggle for a weapon. While tests indicated that Wallace did have gunpowder residue on both hands, the forensic scientist testified that residue commonly is found on the hands of persons who have been shot multiple times. Based on the evidence in the record, we cannot conclude that the evidence was insufficient to prove malice beyond a reasonable doubt. Accordingly, we affirm the convictions.

<u>Affirmed.</u>