COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Beales and Powell
Argued at Richmond, Virginia


RANDOLPH A. SZENASY

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1068-09-2                      JUDGE RANDOLPH A. BEALES
                                                    OCTOBER 26, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Thomas V. Warren, Judge

Brian S. Foreman (William R. Blandford, Jr.[1]; Blandford & Jones,
P.C., on brief), for appellant.

Benjamin H. Katz, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Following a bench trial, Randolph A. Szenasy (appellant) was convicted of first-degree

murder, in violation of Code § 18.2-32, and use of a firearm in the commission of murder, in

violation of Code § 18.2-53.1.  On appeal, appellant argues that the trial court abused its

discretion when it admitted photographs of appellant's bedroom.  Appellant also argues that the

evidence was insufficient to support his convictions beyond a reasonable doubt.  Disagreeing

with appellant's arguments, we affirm for the reasons stated below.


---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Mr. Blandford was given permission by this Court to withdraw from the case after he
submitted appellant's brief.  Mr. Foreman was then appointed as appellant's counsel and
represented him at oral argument.

I. BACKGROUND

Appellant lived near his sister and her husband (D.M.)[2] on a family-owned parcel of land.
According to his sister, appellant and D.M. "were buddy-buddy because they would drink
together right much." Both appellant and D.M. had a high tolerance for alcohol.

On the night of August 28, 2008 and into the early morning hours of August 29, 2008,
appellant and D.M. drank beer in the bedroom of appellant's home. A mutual friend, K.M., was
also present. During that evening, appellant expressed his anger about an arrangement to remove
timber from the family land, which was scheduled to begin on August 29. D.M. insisted several
times that he would not personally profit from the sale of the timber. According to K.M.,
appellant said that he "had something" for the tree-cutting crew and that he "got something for
you too" – referring to D.M. Appellant held a firearm while he said this, and he "removed the
clip a time or two," although he was not cleaning the firearm. K.M. and D.M. left appellant's
home at about 3:00 a.m. on August 29.

D.M. returned to appellant's home with appellant's sister between 10:00 a.m. and
11:00 a.m. on August 29. While appellant's sister discussed the sale of the timber with appellant
inside the home, D.M. stood outside with H.M., another mutual friend. A short time later, after
the conversation with his sister had ended, appellant heard D.M.'s voice outside the house.
Appellant then retrieved a firearm from his bedroom, walked outside, and told D.M. to leave.
Appellant held the firearm "behind his pants." H.M. saw the firearm and tried to take it from
appellant, but appellant maintained control of this weapon.

---

[2] We use initials rather than names in this opinion in an effort to better protect the privacy
of the witnesses and the victim's family.

D.M., who was weaponless, approached the porch of the house, where appellant was standing. D.M. held up his hands and said, "Shoot me." Appellant then shot D.M. three times, killing him. Two of the shots – to D.M.'s chest and abdomen – were independently lethal.

Two friends of appellant arrived a short time later. They saw D.M.'s body on the concrete in front of appellant's porch. Appellant was sitting in a chair on the porch, smoking a cigarette and drinking a beer. He appeared calm. Appellant told his friends that he shot D.M. because "he was coming after me." He said that the firearm he had used to kill D.M. was inside the house on a coffee table.

This firearm, a nine-millimeter semi-automatic pistol, was admitted into evidence at appellant's trial. Over appellant's objection, the trial court also accepted six photographs of appellant's bedroom that depicted the contents of the room, including several firearms.

Appellant argued in the trial court that he killed D.M. because D.M. provoked him and because he feared that D.M. would harm him if he did not use lethal force.[3] Thus, appellant argued that he did not kill D.M. with malice, as required to prove murder. In addition, appellant argued that he had been too severely intoxicated to commit a premeditated killing.

The trial court, acting as factfinder, rejected these defense theories. The trial court found that D.M. was not "some sort of a raging bull that threatened you by coming closely towards you." Instead, the trial court found that appellant was "absolutely obsessed with the sale of timber" and that appellant "would not be denied" even when H.M. tried to defuse the situation.

---

[3] Testifying in his own defense, appellant contended that he did not initially intend to shoot D.M., but instead only wanted to persuade D.M. to leave, when he retrieved the pistol from his bedroom. Appellant testified that he was afraid of D.M. because they had "nasty arguments" in the past and because appellant has only one arm with which to defend himself. Appellant also claimed that during a prior incident D.M. had discharged a firearm in appellant's room and that D.M. had fought with appellant's brother. Because much of this evidence is in dispute, we must review the evidence that is in dispute in the light most favorable to the Commonwealth, as the party who prevailed before the factfinder. See Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004).

Furthermore, referring to the testimony of appellant's friends, the trial court found that appellant was "cool as a cucumber" shortly after the killing. The trial court found that appellant was not "blind drunk, falling around [or] didn't know where he was or anything" – especially since the evidence established that appellant had a high tolerance for alcohol.

Therefore, the trial court found that the evidence was sufficient to convict appellant of first-degree murder and use of a firearm in the commission of murder.

## II. ANALYSIS

### A. Admission of Photographs of Appellant's Bedroom

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006) (quoting Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004)). An abuse of discretion occurs only when "'reasonable jurists could not differ'" that the trial court erred. Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)).

The Supreme Court of Virginia has explained that evidence is relevant

> if it has any logical tendency to prove an issue in a case. Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Relevant evidence may be excluded only if the prejudicial effect of the evidence outweighs its probative value. The question whether the prejudicial effect of evidence exceeds its probative value lies within the trial court's discretion. Id.

Goins v. Commonwealth, 251 Va. 442, 461-62, 470 S.E.2d 114, 127 (1996); see also Cook v. Commonwealth, 7 Va. App. 225, 231, 372 S.E.2d 780, 784 (1988) ("[I]t is always essential to the right to introduce a photograph in evidence that it have a relevant and material bearing upon

- 4 -

some matter in controversy at the trial, and the party offering such evidence should give proof of its relevancy to the issue before the [factfinder].").

Here, six photographs of appellant's bedroom were admitted during the direct examination of K.M., who testified about events that occurred during the night before the killing. K.M. testified that appellant held what appeared to be a nine-millimeter pistol when he said that he had "something" for D.M. However, K.M. explained that he could not tell precisely which firearm appellant was holding because the lighting in the bedroom was poor and because appellant kept "lots of guns" in his bedroom. The Commonwealth then sought to introduce the photographs, which showed several firearms in appellant's bedroom. The trial court accepted the prosecutor's uncontested proffer that the photographs accurately represented the bedroom the night before the shooting – when K.M. observed appellant handle a firearm during the argument with D.M. about the sale of the timber – and found that the photographs were relevant and admissible.

These photographs served as an "independent silent witness" corroborating K.M.'s testimony that appellant handled a firearm when he said he had "something" for D.M. See Bailey v. Commonwealth, 259 Va. 723, 738, 529 S.E.2d 570, 579 (2000) ("Photographs are generally admitted into evidence for two purposes: to illustrate a witness' testimony, and as an 'independent silent witness' of matters revealed by the photograph."). Since this statement was made by appellant mere hours before he shot and killed D.M. with a firearm retrieved from the bedroom, these photographs were certainly relevant and related to a matter properly at issue when the photographs were admitted into evidence. Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987). Therefore, the trial court did not err in admitting them as relevant evidence.

Appellant argues that, even if relevant, the photographs were "inflammatory in nature" and "result[ed] in unjustifiable prejudice" because they showed "an unkempt and unclean room full of alcoholic beverage containers and general filth." However, appellant's assertions on this point fail to establish the prejudicial effect of these photographs. The photographs were even arguably potentially *helpful* to appellant's argument that he was too intoxicated to have the necessary premeditation for first-degree murder because they showed that his bedroom was full of alcoholic beverage containers. Therefore, although they supported the prosecution's case, the photographs also supported appellant's testimony that he was just too drunk to commit a premeditated murder. Moreover, the trial judge, as the factfinder here, is presumed to disregard any inadmissible prejudicial aspect of otherwise admissible evidence. Kilby v. Commonwealth, 52 Va. App. 397, 407-08, 663 S.E.2d 540, 546 (2008).

On this record, therefore, the trial court did not abuse its discretion when it accepted into evidence the photographs of appellant's bedroom.

## B. Sufficiency of the Evidence

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar

standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

The trial court found that appellant's act of shooting D.M. three times from close range was a "willful, deliberate, and premeditated" killing. Code § 18.2-32. Appellant argues that the evidence was insufficient to support a murder conviction because the Commonwealth failed to establish that he acted with malice. Alternatively, appellant argues that he was so severely intoxicated when he killed D.M. that he was incapable of premeditation, as was required to prove first-degree murder.

Malice

Malice "is of the essence of murder. It is the element that distinguishes it from manslaughter." Moxley v. Commonwealth, 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953) (citation omitted). Appellant argues that the evidence proved at most voluntary manslaughter,[4] which is "the unlawful killing of another without malice." Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997).

"To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation." Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986). "Heat of passion" occurs when "the *furor brevis* . . . renders a man deaf to the voice of reason." Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929). "As a general rule, whether provocation, shown by credible

_____

[4] In the trial court, appellant argued that he acted in self-defense, but the trial court rejected this argument. During oral argument before this Court, appellant's counsel contended that "this case lies somewhere between voluntary manslaughter and self-defense." Because appellant does not rely on a separate self-defense argument on appeal, we need not further discuss the trial court's finding that self-defense principles were inapplicable to the facts of this case.

evidence, is sufficient to engender the *furor brevis* necessary to rebut the presumption of malice arising from a homicide is a question of fact." McClung v. Commonwealth, 215 Va. 654, 656, 212 S.E.2d 290, 292 (1975). The factfinder makes this determination by assessing "the nature and degree of the provocation," which "may be founded upon rage, fear, or a combination of both." Barrett, 231 Va. at 106, 341 S.E.2d at 192.

Appellant contends that his rage at D.M., combined with his fear of D.M., provoked him to kill D.M. without the presence of malice. However, the trial court specifically found that D.M. was not "some sort of a raging bull" when appellant shot and killed him. Thus, the trial court rejected the claim that D.M. provoked appellant so greatly as to negate a finding of malice. Furthermore, although H.M. testified that appellant and D.M. were yelling at each another, "[w]ords alone, no matter how insulting, are never sufficient to constitute heat of passion," Rhodes v. Commonwealth, 41 Va. App. 195, 201, 583 S.E.2d 773, 776 (2003), and thus cannot justify killing another person, Caudill v. Commonwealth, 27 Va. App. 81, 85, 497 S.E.2d 513, 515 (1998).

In addition, the trial court found no circumstances establishing a reasonable belief that D.M. would inflict serious bodily harm on appellant at that time. Unlike appellant – who hid his pistol behind his back when he confronted D.M. – D.M. approached appellant with his hands up, demonstrating that he was not holding a weapon.

Therefore, viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, Riner, 268 Va. at 330, 601 S.E.2d at 574, the trial court's rejection of appellant's heat of passion argument was not plainly wrong or without evidentiary support, Code § 8.01-680. Thus, we defer to the trial court's factual finding that appellant's killing of D.M. was malicious. See Essex v. Commonwealth, 228 Va. 273, 281-82, 322 S.E.2d 216, 219-20 (1984).

<u>Premeditation</u>

The Supreme Court of Virginia has explained:

> [T]he question whether a defendant is guilty of a premeditated killing of the victim is usually a jury question. The intention to kill need not exist for any specified length of time prior to the actual killing; the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill.

<u>Weeks v. Commonwealth</u>, 248 Va. 460, 477, 450 S.E.2d 379, 390 (1994).

Here, as the trial court noted, appellant was upset about the arrangement to remove timber from the family-owned parcel of land, and he argued with D.M. about this arrangement the night before he killed D.M. During this argument, appellant handled a firearm and stated that he had "something" for D.M. Mere hours later, when he heard D.M.'s voice from outside his home, appellant retrieved a pistol from the bedroom and confronted D.M. Appellant initially held the pistol behind his back. After H.M. attempted to intervene, appellant shot D.M., who was unarmed, three times in quick succession. Two of those shots were independently lethal. Appellant then did not attempt to aid his victim, but instead sat in a chair on his porch, near D.M.'s body, smoking a cigarette and drinking a beer.

On this record, a rational factfinder, such as the trial court here, could certainly find that appellant had sufficient time and opportunity to consider the consequences of his actions and that he formed the specific intent to kill D.M. <u>Weeks</u>, 248 Va. at 477, 450 S.E.2d at 390.

Claiming that he consumed "prodigious" amounts of alcohol before the shooting, appellant argues that he was so intoxicated that he was incapable of deliberation or premeditation. <u>See</u> <u>Essex</u>, 228 Va. at 281-82, 322 S.E.2d at 219-20; <u>see also</u> <u>Fitzgerald v. Commonwealth</u>, 223 Va. 615, 631, 292 S.E.2d 798, 807 (1982); <u>Giarratano v. Commonwealth</u>, 220 Va. 1064, 1073, 266 S.E.2d 94, 99 (1980). However, as the Supreme Court has held, "*mere*

*intoxication* from drugs or alcohol will not suffice to negate premeditation." Jenkins v. Commonwealth, 244 Va. 445, 458, 423 S.E.2d 360, 368 (1992) (emphasis added).

It is undisputed that appellant drank beer into the early morning hours of August 29, 2008, and that appellant consumed three more beers before D.M. arrived back at appellant's house that morning. However, the evidence also established that appellant had a high tolerance for alcohol. Appellant himself testified that he had only a hangover that morning, and he acknowledged that he was "not really" drunk at the time of the murder. He also testified that drinking three beers before noon was not particularly unusual for him. Thus, appellant's own testimony did not support an inference that he was greatly intoxicated when he shot and killed D.M.

Additional evidence at trial supported appellant's own evaluation of his condition that morning. For instance, his friends testified that, when they arrived very shortly after the shooting, appellant was sitting on a chair on the porch smoking a cigarette and drinking a beer. He appeared calm and responded to their questions in a clear, straightforward manner. The trial court had sufficient evidence to find that appellant was "cool as a cucumber" at that time.

The record contained no evidence that required the factfinder to conclude that appellant was so significantly impaired by his consumption of alcohol as to negate premeditation. See Jenkins, 244 Va. at 458, 423 S.E.2d at 369.

### III. CONCLUSION

The trial court did not abuse its discretion when it admitted photographs of appellant's bedroom, which were relevant evidence and were not prejudicial. In addition, the trial court did not err in finding that appellant killed D.M. in a malicious and premeditated manner. Therefore, the evidence was sufficient beyond a reasonable doubt to support appellant's convictions for

first-degree murder and use of a firearm in the commission of that murder.  Accordingly, we affirm these convictions.

<u>Affirmed.</u>